# United States Court of Appeals
# for the Federal Circuit

**JACKI EASLICK LLC, JE CORPORATE LLC,**

*Plaintiffs-Appellants,*

v.

**ACCENCYC US,**

*Defendant-Appellee,*

**CJ EMERALD, ET AL.,**

*Defendants.*

*Appeals from the United States District Court
for the Western District of Pennsylvania in
No. 23-cv-2000, Judge William S. Stickman IV*

## APPELLANTS' BRIEF

Stanley D. Ference III
Brian Samuel Malkin
FERENCE & ASSOCIATES LLC
409 Broad Street
Pittsburgh, Pennsylvania 15143
(412) 741-8400
courts@ferencelaw.com

November 19, 2024          *Attorneys for Appellants*

# CLAIM

U.S. Patent No. D 695,526

The ornamental design for a handbag hanger hook, as shown and described.



FIG. 1

FIG. 2

FIG. 3

FIG. 4

FIG. 5

FIG. 6

FIG. 7

FIG. 8

# CERTIFICATE OF INTEREST

Counsel for Jacki Easlick LLC and JE Corporate LLC certifies the following:

1. **Represented entities.** Provide the full names of all entities represented by undersigned counsel in this case.

Jacki Easlick LLC, and JE Corporate LLC.

2. **Real Parties in Interest.** Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

None.

3. **Parent Corporations and Stockholders.** Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None.

4. **Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court.

None.

5. **Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)? If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).

No.

6. **Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).

Not applicable.


Dated:  November 19, 2024          /s/ Stanley D. Ference III

                                   Stanley D. Ference III

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ............................................................... i

TABLE OF AUTHORITIES .................................................................. iii

INTRODUCTION ................................................................................. 1

STATEMENT OF RELATED CASES ................................................... 4

STATEMENT OF JURISDICTION ...................................................... 4

STATEMENT OF THE ISSUES ........................................................... 5

STATEMENT OF THE CASE .............................................................. 6

SUMMARY OF THE ARGUMENT ..................................................... 9

STANDARD OF REVIEW .................................................................. 12

ARGUMENT ....................................................................................... 13

    The District Court Abused Its Discretion When It Denied the
    Jackie Easlick Companies' Preliminary Injunction Motion, Such That It
    Would be Appropriate to Vacate and Remand the Order for Further
    Consideration .............................................................................. 13

    A.    The District Court Applied the Wrong Standard When
           Evaluating Likelihood of Success on the Merits ................. 14

           1.  The District Court Improperly Focused on
               Individual Design Details.................................... 15

           2.  The District Court Improperly Failed to Consider
               the Prior Art...................................................... 19

    B.    The District Court's Finding the Jacki Easlick Companies Had Not
           Shown Irreparable Harm Is Incorrect.................................... 24

CONCLUSION ................................................................................... 29

# TABLE OF AUTHORITIES

**Cases**

*ABC Corp. I v. P'ship & Unincorporated Associations Identified on Schedule "A"*,
52 F.4th 934 (Fed. Cir. 2022) .............................................................20

*Apple Inc. v. Samsung Elecs. Co.*,
695 F.3d 1370 (Fed. Cir. 2012) .........................................................13

*AstraZeneca LP v. Apotex Corp.*,
633 F.3d 1042 (Fed. Cir. 2010) .........................................................27

*Constructors Ass'n of W. Pennsylvania v. Kreps*,
573 F.2d 811 (3d Cir. 1978) ..............................................................12

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990) ................13

*Crocs, Inc. v. Int'l Trade Comm'n*,
598 F. 3d 1294 (Fed. Cir. 2010) ............................................. 17, 18, 20

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
717 F.3d 1336 (Fed. Cir. 2013) .........................................................28

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008) (en banc) ........................ 14, 15, 19, 20

*Gorham Manufacturing Co. v. White*,
81 U.S. 511 (1871) .................................................................... 14, 16

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
572 U.S. 559, 134 S. Ct. 1744, 188 L. Ed. 2d 829 (2014) ................13

*Kars 4 Kids Inc. v. Am. Can!*,
98 F.4th 436 (3d Cir. 2024) ..............................................................13

*Lanard Toys Ltd. v. Dolgencorp LLC*,
958 F.3d 1337 (Fed. Cir. 2020) .........................................................21

*Little v. Jones*,
607 F.3d 1245 (10th Cir. 2010) .........................................................12

# TABLE OF AUTHORITIES
## (Continued)

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*,
    165 F.3d 891 (Fed. Cir. 1998) ............................................................12

*O2 Mirco Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    No. 2:04-cv-0032, 2007 WL 869576 (E.D. Tex. Mar. 21, 2007)......................28

*Presidio ComponentsInc. v. Am. Tech. Ceramics Corp.*,
    702 F.3d 1351 (Fed. Cir. 2012) ...........................................................27

*Procter & Gamble Co. v. Kraft Foods Glob., Inc.*,
    549 F.3d 842, 846 (Fed. Cir. 2008) ............................................5, 12

*Reebok Int'l Ltd. v. J. Baker, Inc.*,
    32 F.3d 1552 (Fed. Cir. 1994) ...........................................................27

*Revision Mil., Inc. v. Balboa Mfg. Co.*,
    700 F.3d 524 (Fed. Cir. 2012) .................................................. 14, 16, 17, 18, 19

*Richardson v. Stanley Works, Inc.,*
    597 F.3d 1288 (Fed. Cir. 2010) .........................................................15

*Robert Bosch, LLC v. Pylon Mfg. Corp.*,
    659 F.3d 1142 (Fed. Cir. 2011) .........................................................28

*Trebro Mfg., Inc. v. Firefly Equip., LLC*,
    748 F.3d 1159 (Fed. Cir. 2014) .........................................................12

**Statutes**

28 U.S.C. § 1292(a)(1)............................................................................4, 5

28 U.S.C. § 1292(c)(1)............................................................................4

# INTRODUCTION

Appellants Jacki Easlick LLC and JE Corporate LLC[1] (collectively, the "Jacki Easlick Companies") are small businesses owned by Jacki Easlick ("Ms. Easlick"), who designed an innovative hanger for handbags sold by her two businesses. The Jacki Easlick Companies have been plagued by a stream of online counterfeit vendors selling imitations of Ms. Easlick's product, the TOTE HANGER®, which is protected by U.S. Patent No. D695,526 ("the '526 patent").

To stem the tide of cheap infringements crushing their businesses, the Jacki Easlick Companies filed a lawsuit against 67 online sellers infringing the '526 patent and sought both a temporary restraining order and a preliminary injunction. The Easlick Companies supported both motions with a memorandum and three declarations. The *Mesiti Declaration* provided expert testimony on the prior art cited in the '526 patent, the construction of the claim of the '526 patent, the infringement of the '526 patent by the defendants, and the validity of the '526 patent. The *Easlick Declaration* and *Ference Declaration* included testimony establishing the irreparable harm being incurred by the Jacki Easlick Companies.

---

[1] JE Corporate LLC is the owner of the intellectual property created by Ms. Jacki Easlick and Jacki Easlick LLC sells the products incorporating Ms. Easlick's designs.

The district court entered a temporary restraining order against all 67 online sellers, set a hearing on the preliminary injunction motion, and set a date for any opposition briefs by the defendants. No defendant submitted an opposition to the preliminary injunction by the date set by the district court, but the day before the hearing, Appellee Accencyc US ("Accencyc"), a Chinese company, filed a five-page opposition to the preliminary injunction motion which addressed only a single issue: Accencyc's opposition argued that the Jacki Easlick Companies were not likely to succeed on the merits because the accused product had certain differences from the TOTE HANGER®. Accencyc's opposition contained only attorney argument on these purported differences; it did not contain any supporting evidence, nor did it argue there was no irreparable harm to the Jacki Easlick Companies.

The district court subsequently entered a preliminary injunction against all of the defendants except Accencyc, but denied the Jacki Easlick Companies' motion for a preliminary injunction against Accencyc. The district court's decision improperly determined that the Jacki Easlick Companies failed to establish likelihood of success on infringement by adopting Accencyc's approach of focusing on differences in minor details between Accencyc's product and the individual features of the '526 patent's design instead of considering the overall design in the context of the prior art, as required by this Court's precedent.

Furthermore, even though Accencyc did not contest the Jacki Easlick Companies' contention that they would suffer irreparable harm in the absence of a preliminary injunction, the district court found the Jacki Easlick Companies had failed to submit sufficient evidence of their irreparable harm. In its opinion, however, the district court cited only to the arguments in the Jacki Easlick Companies' memorandum, without discussing or even acknowledging any of the evidence contained in the declarations. Thus, it appears that the district court inadvertently overlooked the fact that the Jacki Easlick Companies had submitted supporting evidence.

This Court reviews the district court's denial of a preliminary injunction under an abuse of discretion standard. Here, the district court abused its discretion when it applied the wrong legal standard to its finding that the Jacki Easlick Companies failed to establish likelihood of success on the merits and when it erroneously believed that the Jacki Easlick Companies had failed to submit evidence establishing irreparable harm. Accordingly, the Jacki Easlick Companies respectfully request that this Court vacate the district court's denial of the motion for a preliminary injunction as to Accencyc and remand for reconsideration consistent with this Court's precedent.

## STATEMENT OF RELATED CASES

This case has not previously been before this Court. At the district court, this online infringement case involved multiple defendants. *Jacki Easlick LLC v. CJ Emerald*, No. 23-2000 (W.D. Pa.) (Judge Stickman). In this Court, the Jacki Easlick Companies' appeals—both as to Accencyc—from the denial of the Jacki Easlick Companies' motion for a preliminary injunction and denial of the Jacki Easlick Companies' motion for reconsideration of the denial of the motion for preliminary injunction have been consolidated. The case is still pending before the district court as to the sole remaining defendant, Accencyc. All other defendants are no longer in the district court case, either having been terminated or having had a default judgment entered. Other than this district court case, the Jacki Easlick Companies are unaware of any other case or proceeding that is in any way related to this case, whether completed, pending, or about to be presented before this court or any other court or agency, state or federal. Other than this district court case, there are no cases pending in any court or agency that will directly affect or be directly affected by the Federal Circuit's decision in this appeal.

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this appeal under 28 U.S.C. § 1292(a)(1) and (c)(1). "Taken together, these subsections provide that this court has exclusive jurisdiction over appeals from interlocutory orders 'granting, continuing,

modifying, refusing or dissolving injunctions,' 28 U.S.C. § 1292(a)(1), in any case over which this court would have jurisdiction of an appeal under § 1295." *Procter & Gamble Co. v. Kraft Foods Glob., Inc.*, 549 F.3d 842, 846 (Fed. Cir. 2008)

## STATEMENT OF THE ISSUES

1.      Whether the district court abused its discretion when it applied the wrong legal standard when analyzing the Jacki Easlick Companies' likelihood of success on the merits on their design patent infringement claim by comparing individual design features rather than the overall appearance of the products and by failing to consider the designs in the context of the prior art?

2.      Whether the district court abused its discretion when it found that the Jacki Easlick Companies did not provide evidence that they were suffering irreparable harm, when Accencyc did not contest the issue before the district court and the district court was apparently unaware of the evidence that the Jacki Easlick Companies submitted to establish irreparable harm?

## STATEMENT OF THE CASE

The TOTE HANGER® was not the first device for hanging purses on closet rods; there were a number of such closet hooks at the time Ms. Easlick invented the TOTE HANGER®. (Appx235; Appx220-22; Appx333-361) Ms. Easlick's innovation was her design, which added, most notably, a 90-degree orientation

between the top hook and the bottom hook. (Appx223)  The TOTE HANGER® is

shown below:



(Appx391)

  The TOTE HANGER® sold well until the defendants entered the online

marketplace with products that copied Ms. Easlick's design. (Appx65, ¶ 48)

Photographs of the TOTE HANGER® and Accencyc's product appear below:

| TOTE HANGER® (Appx642[2]) | Accencyc's Product (Appx376) |
|---|---|
| | |

[2]  Although this particular picture was not before the district court, pictures of the
actual product were included in the Complaint.  (Appx058) The actual product was
also before the district court on the motion for reconsideration. (Appx642)

- 6 -

After the defendants began selling their infringing products, sales of the TOTE HANGER® plummeted. (Appx65, ¶ 48) To stem the tide of cheap infringements crushing their businesses, the Jacki Easlick Companies filed a lawsuit against 67 online sellers infringing the '526 patent and sought both a temporary restraining order and a preliminary injunction. In support of the requests for injunctive relief, Ms. Easlick testified that the defendants' sales of the accused products were causing irreparable harm to the Jacki Easlick Companies' goodwill and reputation, irreparable harm to the Jacki Easlick Companies' brand, consumer confusion, false association, and loss of ability to attract investors and markets for the Jacki Easlick Companies' products. *Easlick Dec.* (Appx87-90, ¶¶ 19, 20, 22, 23, 27)

After reviewing all the evidence, the district court entered a temporary restraining order against each of the 67 defendants, including Accencyc, restraining them from "unauthorized and unlicensed use of the Plaintiffs' Patent in connection with the distribution, marketing, advertising, offering for sale, or sale of any Infringing Products." (Appx553) The district court then scheduled a hearing on the request for a preliminary injunction on December 19, 2023, with a briefing schedule requiring the defendants to submit any opposition by December 11, 2023. (Appx656, Doc. 27) The Jacki Easlick Companies timely submitted their brief, but no defendant submitted a brief on the date the district court set for opposition

briefs. On December 18, 2023, one day before the hearing, however, Accencyc submitted a brief opposing the issuance of a preliminary injunction. (Appx658, Doc. 48)

Following the hearing, the district court ruled that the Jacki Easlick Companies had not established a likelihood of succeeding in proving that Accencyc was infringing on the '526 patent and that the Jacki Easlick Companies had not submitted sufficient evidence of irreparable harm to support an injunction. (Appx18-19) The Jacki Easlick Companies filed a motion for reconsideration with the district court and then filed an appeal of the denial of the preliminary injunction.

In support of their motion for reconsideration, the Jacki Easlick Companies offered additional evidence regarding irreparable harm. This additional evidence provided detail on the irreparable harm identified in the motion and supporting affidavits. Specifically, the new declaration of Ms. Easlick discussed interactions with specific stores and online platforms and provided more detail about the economic and reputational harm caused by the infringers. *See Easlick Dec*. (Appx636-640, ¶¶ 30 – 40)

While the appeal of the denial of the preliminary injunction was pending before this Court, the district court denied the Jacki Easlick Companies' request for reconsideration, stating that the district court would not consider the newly

submitted evidence because it had been available to the Jacki Easlick Companies at the time they filed their original motion. (Appx26-28) The Jacki Easlick Companies then filed an appeal from the district court's denial of the request for reconsideration. (Appx645) The Jacki Easlick Companies' two appeals have been consolidated.

## <ins>SUMMARY OF THE ARGUMENT</ins>

The district court denied the Jacki Easlick Companies' motion for a preliminary injunction based on its findings that the Jacki Easlick Companies had not established likelihood of success on the merits or irreparable harm. Starting with the district court's conclusion regarding likelihood of success on the merits, the district court applied the wrong legal standard, and therefore abused its discretion.

The patent at issue in this action is a design patent. To evaluate a claim of design patent infringement, the court must apply the "ordinary observer" test, considering whether the "accused article embodies the patented design or any colorable imitation thereof." This test turns on similarities of the overall design, not of individual ornamental features considered in isolation.

Although the district court articulated the correct legal standard, the court actually applied an incorrect standard. The TOTE HANGER® is a hook for hanging purses on a closet rod. Prior to Ms. Easlick's design of her novel product, a variety

of purse hooks already existed (the prior art). Ms. Easlick's design differed from the prior art in that the hook for the purse was rotated 90 degrees from the hook for the closet rod. It contained two similarly shaped hooks, with knobs on the end of each hook, and was easily and immediately distinguishable from the prior art.

In its opposition to the Jacki Easlick Companies' motion for the preliminary injunction, Accencyc improperly focused on individual minor details of the TOTE HANGER® and the accused product, misleading the district court. Specifically, Accencyc relied on the "corkscrew" shape of the section connecting the two hooks, the flare at the end of the top hook, and the shape of the balls at the end of the hooks in the TOTE HANGER®. Because these specific elements were not identical in the accused product, Accencyc argued and the district court improperly concluded, the products were "plainly dissimilar." The district court abused its discretion when it relied on these specific individual ornamental features instead of considering the two products wholistically. If the correct legal standard is applied by considering the overall appearance of the two products, as compared to the prior art, the evidence before the district court demonstrated that the Jacki Easlick Companies had a likelihood of success on the merits.

With respect to the district court's finding that there was no irreparable harm, the district court based its finding on its conclusion that the Jacki Easlick Companies had not introduced evidence to establish irreparable harm and instead

were relying on conclusory assertions in their memorandum. In fact, the Jacki Easlick Companies supported the assertions in their memorandum with the evidence in Ms. Easlick's and Mr. Ference's declarations, which they filed with their complaint. The evidence in the declarations established that the defendants' sales of the accused products were causing irreparable harm to the Jacki Easlick Companies' goodwill and reputation, irreparable harm to the Jacki Easlick Companies' brand, consumer confusion, false association, and loss of ability to attract investors and markets for the Jacki Easlick Companies' products—precisely the type of harm that this Circuit has found to constitute irreparable harm.

In its opposition to the Jacki Easlick Companies' motion for a preliminary injunction, Accencyc did not even mention irreparable harm, much less attempt to controvert these declarations. Furthermore, the district court had previously found the declarations sufficient to support its issuance of a temporary restraining order. Accordingly, while the Jacki Easlick Companies had additional evidence related to the harm they have suffered, they did not understand that the district court might want additional evidence in light of the district court's prior issuance of a temporary restraining order based on the original evidence and the lack of any challenge on that issue from Accencyc, and therefore did not supplement the record on this issue.

Accordingly, the Jacki Easlick Companies respectfully request that this Court vacate the district court's ruling and remand the case with clarification on the standard for evaluating infringement of a design patent and for consideration of the Jacki Easlick Companies' evidence of irreparable harm.

## STANDARD OF REVIEW

In general, this Court reviews a grant or denial of a preliminary injunction using the law of the regional circuit. *Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1165 (Fed. Cir. 2014). "However, the Federal Circuit has itself built a body of precedent applying the general preliminary injunction considerations to a large number of factually variant patent cases and gives dominant effect to Federal Circuit precedent insofar as it reflects considerations specific to patent issues." *Id* (quoting *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 894 (Fed. Cir. 1998) (cleaned up)). Both the Third Circuit and the Federal Circuit review the denial of a preliminary injunction motion for an abuse of discretion. See *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) (Federal Circuit's standard of review for the denial of a preliminary injunction is abuse of discretion) and *Constructors Ass'n of W. Pennsylvania v. Kreps*, 573 F.2d 811, 815 (3d Cir. 1978) ("Absent an obvious error of law or a serious mistake in the consideration of proof, the trial court's decision will be reversed only for an abuse of discretion."). *See also Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 849 (Fed. Cir. 2008).

Although the abuse of discretion standard accords considerable deference to a district court's factual findings, a "district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, ⸻ U.S. ⸻, 134 S. Ct. 1744, 1748 n.2, 188 L. Ed. 2d 829 (2014) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990)).  Under the law of the regional circuit in this case (the Third Circuit), "a district court abuses its discretion when it applies an incorrect legal standard."  *Kars 4 Kids Inc. v. Am. Can!*, 98 F.4th 436, 444 (3d Cir. 2024).

## ARGUMENT

### The District Court Abused Its Discretion When It Denied the Jackie Easlick Companies' Preliminary Injunction Motion, Such That It Would be Appropriate to Vacate and Remand the Order for Further Consideration

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1373–74 (Fed. Cir. 2012) (citation omitted). In this case, the district court denied the Jacki Easlick Companies' motion for a preliminary injunction against Accencyc based on its findings that the Jacki Easlick Companies had not

established the first two of those considerations, likelihood of success on the merits and irreparable harm.

In assessing whether the Jacki Easlick Companies established likelihood of success on the merits in this case, the district court applied the wrong standard for infringement of a design patent, focusing on small ornamentation details rather than on the overall appearance of the product and consumer confusion in the context of the prior art. In assessing irreparable harm, the district court based its finding on its erroneous belief that the Jacki Easlick Companies had not submitted evidence to support the arguments in the Jacki Easlick Companies' memorandum.

### A. The District Court Applied the Wrong Standard When Evaluating Likelihood of Success on the Merits.

The standard for design patent infringement is summarized in *Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F.3d 665 (Fed. Cir. 2008) (en banc), applying the "ordinary observer" test of *Gorham Manufacturing Co. v. White*, 81 U.S. 511 (1871). In *Egyptian Goddess,* this Court explained that the "ordinary observer" test is the sole test for determining whether a design patent has been infringed. Under that test, infringement occurs when the accused article "embod[ies] the patented design or any colorable imitation thereof." *Egyptian Goddess*, 543 F.3d at 678. In rare instances when the two products are "plainly dissimilar," a court might be able to determine whether a product infringes on a design patent by just comparing the two products, but in the vast majority of reported cases, the courts consider the

similarities between the patented product and the allegedly infringing product in the context of the prior art—the appearance of products already on the market at the time of the issuance of the design patent. *See, e.g., id*; *Revision Mil., Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 527 (Fed. Cir. 2012).

The district court failed in two distinct stages of its analysis to apply the proper legal standard to the Jacki Easlick Companies' allegations of infringement, and therefore abused its discretion. First, the district court focused on minor ornamental differences rather than on the overall appearance of the products. Second, even though the TOTE HANGER® was a marked design departure from the prior art, the district court did not consider the prior art in its analysis.

### 1. The District Court Improperly Focused on Individual Design Details.

The starting point for this portion of the analysis is an understanding of what a design patent protects. Design patents protect the overall ornamentation of a design, not an aggregation of separable elements. *See Richardson v. Stanley Works, Inc.,* 597 F.3d 1288, 1295 (Fed. Cir. 2010), noting that "discounting of functional elements must not convert the overall infringement test to an element-by-element comparison."). As this section explains, Accencyc's opposition brief misunderstood the nature of a design patent by focusing on the minutiae and not the overall design, and the district court erroneously adopted Accencyc's mistaken approach.

Under this Court's authority, the evaluation of the overall design in a patent is conducted from the perspective of an "ordinary observer." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (en banc, *citing Gorham v. White*, 81 U.S. 511, 528 (1871)). The "ordinary observer" test examines whether an ordinary observer would perceive that the design of the accused product was substantially the same as the patented design. *Gorham*, 81 U.S. at 528. In order to make this determination, courts must look at the overall design and appearance of the accused product as compared to the patented design. Focusing on individual ornamental details, this Court has explained, misunderstands the test.

A case directly on point regarding this aspect of the "ordinary observer" test in the context of a preliminary injunction motion is *Revision Mil., Inc. v. Balboa Mfg. Co.*, 700 F.3d 524 (Fed. Cir. 2012). Revision Military, Inc. ("Revision") was a manufacturer of protective eyewear used by military establishments, law enforcement agencies, hunters, and range shooters. Revision obtained a design patent for a product it referred to as "Bullet Ant" goggles. Revision commenced a patent infringement action against Balboa Manufacturing Co. ("Balboa"), contending that it was manufacturing and selling goggles that infringed on the "Bullet Ant" patent.

Revision filed a motion for a preliminary injunction. In support of its

motion, Revision submitted this comparison of its patented design and of Balboa's

"Bobster Bravo" goggles:



'098 Patent Figure 2



Bobster Bravo

Revision argued that, to the eye of the ordinary observer, viewing these two

designs as a whole, the designs were substantially the same. *Id* at 526. The district

court disagreed and denied Revision's motion.

On appeal, this Court reversed, explaining that, although the district court

stated the correct "overall design" standard, it didn't actually apply that standard.

Instead, the district court focused on individual features that "stand out as

dissimilar." *Id* at 527.

The district court had based its conclusion on the fact that the shape of the

lenses were different, the concavity of the nose bridges were different, and the two

goggles had different venting along the tops and bottoms. *Id.* Such individual

features may, this Court clarified, have some bearing on assessing the "impact on

the overall appearance," but they are not the sum and substance of the analysis. *Id.*

Despite all of these identified individual differences in design details, this Court remanded the case to the district court for further analysis of the "design-as-a-whole." *Id.*

In its analysis in *Revision Mil., Inc. v. Balboa Mfg. Co.*, this Court cited its earlier opinion in *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F. 3d 1294, 1302 (Fed. Cir. 2010). In that case, Crocs, Inc. sued alleged infringers of the design patent for its sandals. The United States International Trade Commission found no infringement because the accused products had a different configuration of ventilator holes around the front toe portion of the sandals and because the straps were different. This Court found that the written descriptions of the products had led the Commission astray, causing the Commission to focus on individual design details. Those details thus became a "mistaken checklist for infringement." "Without a view to the design as a whole, the Commission used minor differences between the patented design and the accused products to prevent a finding of infringement." *Id* at 1303. In other words, this Court wrote, "the concentration on small differences in isolation distracted from the overall impression of the claimed ornamental features." *Id.* at 1303–04.

As in *Revision Mil., Inc. v. Balboa Mfg. Co.* and *Crocs, Inc. v. Int'l Trade Comm'n*, the district court in this case was led astray by Accencyc. In its opposition, Accencyc focused exclusively on the "corkscrew" twist in the TOTE

HANGER® and the different shapes on the end of the hooks in the two products, ignoring altogether the "overall impression" of the two products. (Compare Appx15 and Appellee's Opposition to Preliminary Injunction at ECF No. 48, p. 3) This improper focus led the district court down a path explicitly prohibited by this Court's caselaw.

The Jacki Easlick Companies submit that, when the overall impression of its patent and the accused product are properly compared, the accused product is nearly identical to the Jacki Easlick Companies' design patent. The "overall" design features of the Jacki Easlick Companies' patent are the two large hooks oriented at 90 degrees from each other. The accused product precisely adopts this design. In fact, the TOTE HANGER® and the accused product are far more similar overall than the two sets of goggles in *Revision Military*. As discussed immediately below, this similarity becomes even more striking in the context of the prior art.

## 2. The District Court Improperly Failed to Consider the Prior Art.

In addition to finding that the district court improperly focused on individual design details rather than on the overall appearance, this Court also faulted the district court in *Revision Military* for failing to consider the two designs in the context of the prior art. The district court had concluded that it did not need to consider prior art based on its identification of the individual minor design differences, but this Court found that "the record suggests otherwise." *Revision*

*Mil., Inc.,* 700 F.3d at 527. Prior art is an important aspect of the analysis, this Court wrote, because it "provides ... a frame of reference and is therefore often useful in the process of comparison." *Id* (quoting *Egyptian Goddess, Inc. v. Swisa*, Inc., 543 F.3d 665 (Fed.Cir.2008) (*en banc*)).

This court also stressed the importance of considering prior art in *Crocs, Inc.*: "When the differences between the claimed and accused designs are viewed in light of the prior art, the attention of the hypothetical ordinary observer may be drawn to those aspects of the claimed design that differ from the prior art." *Crocs. Inc.,* 598 F. 3d at 1302. "If the claimed design is close to the prior art designs, small differences between the accused design and the claimed design assume more importance to the eye of the hypothetical ordinary observer." *Id* at 1303.

The importance of the district court reviewing the prior art was also highlighted in *ABC Corp. I v. P'ship & Unincorporated Associations Identified on Schedule "A"*, 52 F.4th 934 (Fed. Cir. 2022), an online infringement case, where this Court reversed the grant of a preliminary injunction in part because the "district court was required to conduct the ordinary observer analysis through the lens of the prior art" and had not. *Id.* at 942. As this Court explained, "[w]hen the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art." *Id.* (quoting *Egyptian*

- 20 -

*Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 676 (Fed. Cir. 2008) (en banc)); *see also Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1344 (Fed. Cir. 2020).

At the time that Ms. Easlick obtained her design patent, no product on the market had a similar design of two large hooks oriented at 90 degrees:

| The Prior Art and the Patented Design | | | | | |
|---|---|---|---|---|---|
| | '924 Design | '446 Design | '278 Design | '092 Design | '438 Design | Patented Design |
| First Side |  |  |  |  |  |  |

(Appx211, ¶8, Appx221, ¶¶ 31- 33, Appx299 (Fig.2), Appx313, Appx332, Appx239 (Fig. 4))

As the below comparisons illustrate, in the context of this prior art, it is even clearer that an "ordinary observer" would be confused by the design similarities between the Jacki Easlick Companies' patent and the accused product.

| The Closest Comparative Designs and the Jacki Easlick Companies' Design Claimed in the `526 Patent [3] | | | |
|---|---|---|---|
| '924 Design | '446 Design | The Jacki Easlick Companies' Design[4] | The Jacki Easlick Companies' Design[5] (90° Rotated View) |
|  |  |  |  |

---

[3] This chart and the following chart are based on the charts that appear in the *Mesiti Declaration*. (Appx211, ¶8, Appx221, ¶¶ 31- 33, Appx299 (Fig.2), Appx313, Appx332, Appx239 (Fig. 4))

[4] Although this particular picture was not before the district court, pictures of the actual product were included in the Complaint. (Appx058) The actual product was also before the district court on the motion for reconsideration. (Appx642)

| The Closest Comparative Designs and Accencyc's Accused Product | | | |
|---|---|---|---|
| '924 Design | '446 Design | Accencyc's Accused Product[5] | Accencyc's Accused Product (90° Rotated View)[6] |
|  |  |  |  |

To properly assess infringement, the district court should have considered whether an "ordinary observer" encountering the prior art and the TOTE HANGER® in one store or on one website and then encountering the prior art and the accused product in another store or on another website would think that the accused product had the same design as the TOTE HANGER®. Because the district court conducted a side-by-side comparison focused on small individual differences instead of a wholistic "ordinary observer" analysis in the context of the prior art, the district court applied the wrong legal standard—an abuse of discretion as a matter of law.

---

[5] Appx222, ¶32 and Appx378.
[6] Appx379.

**B.** **The District Court's Finding the Jackie Easlick Companies Had Not Shown Irreparable Harm Is Incorrect.**

The district court also found that the Jacki Easlick Companies had failed to demonstrate irreparable harm. The court did not find that the Jacki Easlick Companies had not and would not suffer irreparable harm. Instead, the district court based its ruling on its belief that the Jacki Easlick Companies' allegations in their memorandum that Accencyc's infringing conduct "harms their profits, consumer relationships, brand value, goodwill, and quality reputation are nothing more than conclusory and theoretical." (Appx17-19) The district court acknowledged that the Jacki Easlick Companies had alleged the proper type of harm, but found their assertions inadequate because "they offer no concrete evidence to support their position that they likely will suffer irreparable harm without a preliminary injunction." *Id* The district court's ruling, however, did not mention any of the declarations the Jacki Easlick Companies submitted to support their motion for injunctive relief.

In fact, the record below demonstrates that the Jacki Easlick Companies did submit evidence to support the assertions in their memorandum. As part of their motion for injunctive relief, the Jacki Easlick Companies submitted a declaration by Ms. Easlick that provided testimonial evidence of each of the types of irreparable harm discussed in the memorandum. (Appx85-90) The Jacki Easlick Companies also submitted the declaration of Stanley D. Ference III that explained

how foreign counterfeiting companies such as Accencyc may hide their assets, depriving plaintiffs like the Jacki Easlick Companies of any remedy at law. (Appx95, ¶ 6)

The district court found the evidence of irreparable harm attached to the Jacki Easlick Companies' motion sufficient to issue a temporary restraining order, which also requires irreparable harm. When the matter proceeded to the preliminary injunction stage, Accencyc was the only defendant to oppose the Jacki Easlick Companies' request. Accencyc only did so, however, on the issue of likelihood of success on the merits; in Accencyc's five-page brief in opposition to the request for a preliminary injunction, Accencyc did not contest irreparable harm (and in fact didn't even use the term or any synonym). (*See generally*, ECF No. 98)

Based on the district court's earlier implied finding of sufficient evidence of irreparable harm to support the temporary restraining order and Accencyc's decision not to contest irreparable harm, the Jacki Easlick Companies reasonably understood that aspect of their request for a preliminary injunction to be undisputed. To surprise of the Jacki Easlick Companies, however, the district court based its decision to deny the Jacki Easlick Companies' request for a preliminary injunction in part on its conclusion that the Jacki Easlick Companies had only made conclusory assertions in their memorandum about irreparable harm and had not supported those assertions with evidence. In doing so, the district court appears

to have overlooked the supporting evidence that the Jacki Easlick Companies submitted, as the court did not mention any of these declarations in its opinion. To the extent the court based its ruling on an incomplete and erroneous understanding of the record, it abused its discretion.

At the final injunction stage of this action, the Jacki Easlick Companies will, of course, have the opportunity to submit all of their evidence about irreparable harm—the district court did not make any findings that would prejudice the Jacki Easlick Companies' ability to present that evidence. At the same time, should this Court vacate the district court's denial of the preliminary injunction in light of the district court's misapplication of the standard for assessing infringement of a design patent, on remand the Jacki Easlick Companies will submit additional evidence of irreparable harm. Thus, this Court need not resolve the sufficiency of the record regarding irreparable harm at this time.

Additionally, or in the alternative, as a matter of law, the harm described in the Jacki Easlick Companies' memorandum and documented in the Easlick and Ference declarations meets the standards that this Court has established for irreparable harm. Case law establishes a variety of types of harm that are deemed irreparable harm in situations involving foreign counterfeiters, and the Jacki Easlick Companies submitted abundant evidence to meet those standards.

When two competitors directly compete "for the same customers in the same markets," irreparable harm occurs. *See Presidio ComponentsInc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012). This underlying lawsuit is all about competition between the Jacki Easlick Companies and Accencyc for the same customers in the same markets. (Appx391 and App546-552)

Harm to a patent holder's goodwill also supports issuance of a preliminary injunction. *AstraZeneca LP v. Apotex Corp.,* 633 F.3d 1042, 1063 (Fed. Cir. 2010); *see also Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1558 (Fed. Cir. 1994) ("Harm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure."). Ms. Eastlick's declaration[7] attests that: Accencyc's actions have resulted in actual confusion in the marketplace between Accencyc's accused product and the TOTE HANGER® (Appx87, ¶ 19); Accencyc has created a false association between its accused products, its Internet e-commerce stores, and the Jacki Easlick Companies (Appx88, ¶ 22); Accencyc's accused products threaten to destroy the reputation of high quality that the TOTE HANGER® has earned

---

[7] Ms. Easlick submitted two declarations to the district court, one filed with the complaint, and one attached to the motion to reconsider. This section of this brief relies entirely on Ms. Easlick's first declaration.

(Appx88, ¶ 20); and Accencyc's accused products devalue the Jacki Easlick Companies' brand by associating it with inferior quality goods. (Appx88, ¶ 23)

The refusal of a patentee to license the invention is evidence of an intention to obtain market exclusivity. *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013). "[Exclusivity] is an intangible asset that is part of a company's reputation, and here, [Plaintiffs'] exclusive right to make, use, and sell the patented inventions is under attack by [Defendant's] infringement." *Id.* Accordingly, the sale of infringing products in the absence of a license is evidence of irreparable harm. *Id.* at 1344–45. Ms. Eastlick's declaration states that Accencyc does not have, nor has it ever had, the right or authority to use the Jacki Easlick Companies' patented design, further establishing irreparable harm. (Appx88, ¶ 21)

The inability to recover monetary damages from a foreign entity also supports the existence of irreparable harm. *See Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) (reversing denial of permanent injunction where the likely availability of monetary damages was in question, citing *O2 Mirco Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 2:04-cv-0032, 2007 WL 869576, at *2 (E.D. Tex. Mar. 21, 2007) (where "all three defendants are foreign corporations and that there is little assurance that [plaintiff] could collect money damages")). Here, Accencyc is located in China and sells in the United

States on Amazon.com, which makes any monetary judgment likely uncollectable and thus establishes irreparable harm. (App546-552; Appx96, ¶ 8)

The district court based its decision to deny the Jacki Easlick Companies' request for a preliminary injunction in part on its conclusion that the Jacki Easlick Companies had only made conclusory assertions in their brief about irreparable harm and had not supported those assertions with evidence. In fact, the Jacki Easlick Companies submitted the Easlick and Ference declarations supporting each and every allegation in their brief. The district court appears to have overlooked that supporting evidence, as it does not mention either of these declarations in its opinion. To the extent the court based its ruling on an incomplete and erroneous understanding of the record, it abused its discretion. Likewise, to the extent that the district court found that the evidence in the Jacki Easlick Companies' submissions did not establish irreparable harm, its finding was directly contrary to this Court's authority and thus was an abuse of its discretion.

## CONCLUSION

The Jacki Easlick Companies sued 67 online sellers for selling products that infringed their U.S. design patent. The district court entered a temporary restraining order against all defendants. Accencyc filed a five-page opposition to the Jacki Easlick Companies' preliminary injunction motion which relied on small differences between its product and the design patent. The opposition did not even

mention the term "irreparable harm," much less mount an argument that the Jacki Easlick Companies were not suffering irreparable harm.

The district court denied the Jacki Easlick Companies' motion for a preliminary injunction against Accencyc. The Jacki Easlick Companies respectfully submit that the district court made multiple abuses of its discretion, and therefore that this Court should vacate the district court's order and remand for further proceedings consistent with Federal Circuit precedent.

Starting with the district court's conclusion regarding likelihood of success on the merits, the district court applied the wrong legal standard when it focused on small design differences instead of considering the overall design of the subject products in the context of the prior art. As a matter of law, the district court's application of the wrong legal standard constitutes an abuse of discretion.

With respect to the district court's finding that there was no irreparable harm, the district court based its finding on its mistaken belief that the Jacki Easlick Companies had not submitted evidence to support its allegations of irreparable harm. The Jacki Easlick Companies did, in fact, submit three declarations providing evidence supporting their allegations. The district court did not acknowledge or discuss these declarations, suggesting that the court accidentally overlooked them.

The district court had previously found the three declarations sufficient to support its issuance of a temporary restraining order—a remedy that has the same prerequisites and considerations as a preliminary injunction. Thus, the district court initially considered the Jacki Easlick Companies' evidence to be sufficient. Furthermore, in its opposition to the Jacki Easlick Companies' motion for a preliminary injunction, Accencyc did not even mention irreparable harm, much less attempt to controvert Ms. Easlick's declaration. Thus, the district court either made its ruling without considering the evidence in the record or made a ruling inconsistent with its prior ruling (and without any explanation for its different conclusion). In either case, the district court abused its discretion and acted arbitrarily.

Respectfully submitted,

Dated: November 19, 2024

/s/ Stanley D. Ference III
Stanley D. Ference III
Brian Samuel Malkin
FERENCE & ASSOCIATES LLC
409 Broad Street
Pittsburgh, Pennsylvania 15143
(412) 741-8400 – Telephone
(412) 741-9292 – Facsimile
courts@ferencelaw.com

Attorneys for Appellants

# ADDENDUM

**Addendum – Table of Contents**

***Jacki Easlick, LLC v. Accencyc US***

**Nos. 24-1538, -1826 (Fed. Cir.)**

| <u>Date</u> | <u>Dkt. No.</u> | <u>Document</u> | <u>Appx</u> |
|---|---|---|---|
| 01/26/2024 | 75 | Memorandum Opinion Denying Motion for Preliminary Injunction | Appx1-19 |
| 01/26/2024 | 76 | Order Denying Motion for Preliminary Injunction | Appx20-21 |
| 04/17/2024 | 111 | Memorandum Opinion Denying Motion for Reconsideration | Appx22-33 |
| 04/17/2024 | 112 | Order Denying Motion for Reconsideration | Appx34 |
| | 2-6 | U.S. Patent No. D695,526 | Appx35-43 |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JACKI EASLICK, LLC, *et al*,

    *Plaintiffs*,

v.

CJ EMERALD, *et al*,

    *Defendants*.

Civil Action No. 2:23-cv-2000

Hon. William S. Stickman IV

## <u>MEMORANDUM OPINION</u>

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiffs, Jacki Easlick, LLC ("Easlick") and JE Corporate LLC ("JE"), ask the Court to enter a preliminary injunction enjoining Defendant AccEncyc US ("AE") from its unauthorized "promoting, advertising, distributing, offering for sale, and selling" of Plaintiffs' patented TOTE HANGER® brand handbag hanger hook ("Tote Hanger") associated with U.S. Patent No. D 695,526 S ("Design Patent"). (ECF No. 2, pp. 2, 5, 25). Plaintiffs assert that AE infringed on the Design Patent through offering knock-off versions ("Accused Product") of the Tote Hanger on online marketplaces. (*Id.* at p. 2–3). For the reasons explained below, the Court holds that Plaintiffs have not met their burden in demonstrating that they are entitled to preliminary injunctive relief as to AE.

## I.     STANDARD OF REVIEW

The Patent Act provides, "[w]hoever invents any new, original and ornamental design for an article of manufacture may obtain a [design] patent" pursuant to the Patent Act. 35 U.S.C. § 171(a). At the same time, the Patent Act enables federal courts to issue injunctive relief "to prevent the violation of any right secured by patent." 35 U.S.C. § 283. For design patent

**Appx001**

infringement claims, courts apply the preliminary injunction standards set forth by the United States Supreme Court and the United States Court of Appeals for the Federal Circuit. 28 U.S.C. § 1295(a)(1) ("The [Federal Circuit] shall have exclusive jurisdiction … of an appeal from a final decision of a district court of the United States … in any civil action arising under … any Act of Congress relating to patents.").

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008). Rather, such relief "should be granted only in limited circumstances." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citation omitted). A moving party "must establish entitlement to relief by clear evidence." *Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 526 (3d Cir. 2018). Specifically, the movant must demonstrate:

> (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief.

*Kos Pharms.*, 369 F.3d at 708; *see also Winter*, 555 U.S. at 20. The first two factors are "the most critical," and the moving party bears the burden of making the requisite showings. *Reilly*, 858 F.3d at 176, 179 (citations omitted). Once those "gateway factors" are met, a court should "consider[] the remaining two factors" and then "determine[] in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* at 179.

In reaching its decision on a request for injunctive relief, a district court sits as both the trier of fact and the arbiter of legal disputes. A court must, therefore, make "findings of fact and conclusions of law upon the granting or refusing of a preliminary injunction." *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1178 (3d Cir. 1990) (citing Fed. R. Civ. P. 52(a)(2)). This "mandatory" requirement of Federal Rule of Civil Procedure Rule 52(a)(2) must be met

2

**Appx002**

"even when there has been no evidentiary hearing on the motion." *Id.* Nevertheless, at the preliminary injunction stage, "procedures [] are less formal and evidence [] is less complete than in a trial on the merits." *Kos Pharms.*, 369 F.3d at 718; *see also AT&T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994) ("[T]he grant or denial of a preliminary injunction is almost always based on an abbreviated set of facts, requiring a delicate balancing [that] is the responsibility of the district judge." (citations omitted)). Accordingly, a court "may rely on affidavits and hearsay materials which would not be admissible evidence." *Kos Pharms.*, 369 F.3d at 718 (quoting in parenthetical *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995)). But the weight given to such materials will "vary greatly depending on the facts and circumstances of a given case." *Id.* at 719. A court is also tasked with assessing the credibility of witness testimony and may base the decision to grant or deny a preliminary injunction on credibility determinations. *See, e.g.*, *Hudson Glob. Res. Holdings, Inc. v. Hill*, 2007 WL 1545678, at *8 (W.D. Pa. May 25, 2007).

Against this backdrop, a district court maintains the sound discretion to grant or deny a preliminary injunction. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 178–79 (3d Cir. 2017) ("District courts have the freedom to fashion preliminary equitable relief so long as they do so by 'exercising their sound discretion.'" (citation omitted)). The primary purpose of preliminary injunctive relief is "maintenance of the status quo until a decision on the merits of a case is rendered." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 647 (3d Cir. 1994). The "status quo" refers to "the last, peaceable, noncontested status of the parties." *Kos Pharm*, 369 F.3d at 708.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs invented and now sell the Tote Hanger for consumers to hang and organize their handbags on closet rods. (ECF No. 2, pp. 2–3). Plaintiffs also secured protection for the

Tote Hanger via the Design Patent, which, in turn, claims an "ornamental design for a handbag hanger hook." (ECF No. 2-6, p. 2).

Like Plaintiffs, AE sells hanger hooks for handbags, *i.e,* the Accused Product. (ECF No. 48, p. 3). AE submits that they have sold less than $500 worth of the Accused Product to date. (*Id.* at 4). According to the Complaint, AE is an individual or business entity that duplicates products in foreign jurisdictions and redistributes them under aliases to consumers in the U.S. e-commerce market through online marketplaces Alibaba, AliExpress, Amazon, eBay, Joybuy, Temu, Walmart, and Wish. (ECF No. 2, p. 12). Plaintiffs allege AE fraudulently provided false and/or misleading information to these e-commerce platforms for the creation and maintenance of its online marketplace storefronts and associated seller identification number ("Seller ID") to engage in their alleged infringing activities. (ECF No. 2, p. 13). Plaintiffs further allege that AE uses these Seller IDs to directly engage in unfair competition with Plaintiffs and other authorized sellers by marketing and selling knock-off versions of the Tote Hanger that infringe on the Design Patent. (ECF No. 2, pp. 11–13).

On November 20, 2023, Plaintiffs filed this lawsuit against multiple defendants, including AE, for design patent infringement. (ECF No. 2). In their Complaint and *ex parte* motion, Plaintiffs requested (1) a temporary restraining order; (2) an order restraining assets and merchant storefronts; (3) an order to show cause why a preliminary injunction should not issue; and (4) an order authorizing expedited discovery against AE for infringing their Design Patent. (ECF Nos. 2, 4). On the same day, the Court held a telephonic motion hearing and granted Plaintiffs' motion for an *ex parte* temporary restraining order. (ECF Nos. 17, 22).

On December 18, 2023, Plaintiffs moved for a preliminary injunction that would bar AE from selling the Accused Product during the pendency of this litigation. (ECF No. 46). The next

4

day, the Court heard oral argument on Plaintiffs' request for a preliminary injunction where counsel for AE and Plaintiffs argued whether the Court should impose a preliminary injunction for the alleged design-patent infringement and pre-judgment asset restraint.[1]  (ECF No. 65).

### III.   ANALYSIS

### A.   Plaintiffs' Design Patent Infringement Claim

Plaintiffs have moved for a preliminary injunction on their patent infringement claim alleging that AE infringed upon the Design Patent through "promoting, advertising, distributing, offering for sale, and selling" the Accused Product.  (ECF No. 6, p. 13).  The Court must begin its analysis by evaluating the first two preliminary injunction factors, likelihood of success on the merits and irreparable harm.

#### 1.   Reasonable Likelihood of Success On the Merits

To establish a likelihood of success on the merits, a patentee must show that (1) it is "more likely than not" that the product at issue infringes its patent and (2) its infringement claim will withstand the accused's challenges to the validity and enforceability of its patent.  *See Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 526 (Fed. Cir. 2012); *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001)  If the accused "raises a substantial question concerning either infringement or validity, *i.e.*, asserts an infringement or invalidity defense that the patentee cannot prove lacks substantial merit, the preliminary

---

[1] Counsel for the Maybeller Defendants (ABEL TANG, ATRISS, BESTOYARD, BONNIE CHILD, COLORED FLAG, ENTERTAINMENT FIRST, FACING THE OCEAN, FEPERIG, FULL OF STARS.MIN, GARDEISH, HEMPHILL HEN, HERLLOY, JAGOGH YSON, JONERCEY, KARIN YANG, LIMICOUNTS, LIPU HOOKER, LMPOSING, M.METEORITE, MAYBELLER, NISHUNA, PATRICK YAO, PBFZ, QIKITA, ROBITENO, SHANNON WENHA, SI PEIHONG, SINUOXIANG, SOMIROW, SURMOUNTY, THINKCREATORS, THOMAS ZACK YANG, TRACY ZHONG, TRAVELNA, VITONG, ZARA LEI, ZHONG ROY) appeared at oral argument.  Plaintiffs and the Maybeller Defendants entered into a consent order for a preliminary injunction on December 22, 2023.  (ECF No. 56).

**Appx005**

injunction should not issue." *Amazon.com, Inc.*, 239 F.3d at 1350 (internal quotation marks and citation omitted).

AE does not challenge the validity of the Design Patent, only its infringement claim. (ECF No. 48, pp. 1–3). Where an alleged infringer does not challenge a design patent's validity, "the existence of the patent with its concomitant presumption of validity satisfies the patentee's burden of showing a likelihood of success on the validity issue." *Am. Beverage Corp. v. Diageo North America, Inc.*, 936 F. Supp. 2d 555, 586 (W.D. Pa. 2013) (citing *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1365 (Fed. Cir. 2001). The issue in this case thus turns on whether it is more likely than not that AE's product infringes on the Design Patent.

"[A] design patent, unlike a utility patent, limits protection to the ornamental design of the article." *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010). A two-step analysis is used to determine whether a design patent has been infringed. The first step is to properly construe the claim to determine its meaning and scope. *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995). The second step is to compare the construed claim to the accused design to see if an infringement exists. *Id.* In light of the evidence submitted, the Court finds that Plaintiffs have not demonstrated it is "more likely than not" that the product at issue infringes upon the Design Patent.

a. *Claim Construction*

Typically, design patent claims are better represented by illustrations than by descriptions, "[g]iven the recognized difficulties entailed in trying to describe a design in words." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008). For example, written claim constructions "risk [] placing undue emphasis on particular features of the design and … that a finder of fact will focus on each individual described feature in the

6

verbal description rather than on the design as a whole." *Id.*   Considering those known challenges, the Federal Circuit prefers district courts avoid attempting "to 'construe' a design patent claim by providing a detailed verbal description of the claimed design." *Id.* at 680. Nonetheless, claim construction can be helpful to a fact finder in determining a claim's scope. *Sport Dimension, Inc. v. Coleman Co., Inc.*, 820 F.3d 1316, 1320 (Fed. Cir. 2016).

"[A] design may contain both functional and ornamental elements, even though the scope of a design patent claim "must be limited to the ornamental aspects of the design.'" *Id.* (quoting *Ethicon Endo-Surgery v. Covidien, Inc.*, 796 F.3d 1312, 1333 (Fed. Cir. 2015)).   "Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent." *OddzOn Prods, Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997).   Features are deemed functional if they are "'essential to the use or purpose of the article or if it affects the cost or quality of the article.'"   *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006) (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.10 (1982)).

"The relevant inquiry when determining functionality is 'whether the function performed by the features in question could be accomplished by other designs.'"   *Am. Beverage Corp.*, 936 F. Supp. 2d at 588 (quoting *Herbko Int'l, Inc. v. Gemmy Indus. Corp*, 916 F. Supp. 322, 326 (S.D.N.Y. 1996)).   The Court may also consider

> whether the protected design represents the best design; whether alternative designs would adversely affect the utility of the specified article; whether there are any concomitant utility patents; whether the advertising touts particular features of the design as having specific utility; and whether there are any elements in the design or an overall appearance clearly not dictated by function.

*Richardson v. Stanley Works, Inc.*, 610 F. Supp. 2d 1046, 1049–50, (D. Ariz. 2009) (quoting

*Berry Sterling Corp. v. Pescor Plastics Inc.*, 122 F.3d 1452, 1456 (Fed. Cir. 1997)).

      For example, the Federal Circuit distinguished the functional and ornamental aspects of a

design patent in *OddzOn Prods, Inc.  OddzOn Prods, Inc.*, 122 F.3d at 1405–06.  In that case, the

design patent encompassed a "rocket-like" football-shaped ball that had a tail and fin structure

which added stability for throwing.  *Id.* at 1406.  Although the Federal Circuit determined the tail

and fin structure added to the "rocket-like" appearance of design, it ultimately agreed with the

lower court that the tail and fins were functional because they added stability.  *Id.*  But the

Federal Circuit did not invalidate the entire design patent due to functionality.  *Id.*  Instead, the

court held the functional characteristics "limit[ed] the scope of the patent to its overall

ornamental visual impression, rather than to the broader general design concept of a rocket-like

tossing ball."  *Id.* at 1405.

      The Federal Circuit employed similar reasoning in *Richardson* when it affirmed how a

district court construed a design patent on a multi-function tool.  *Richardson*, 597 F.3d at 1294–

95.  The Federal Circuit found that the design of several elements, including the handle,

hammerhead, jaw, and crowbar, were "dictated by their functional purpose."  *Id.* at 1294.

However, it ruled that the ornamental aspects of those design features were still protected.  *Id.* at

1293.  Both *Richardson* and *OddzOn* inform the Court that features driven by functionality, not

aesthetics, must be excluded from the Court's claim construction of the patented design.

      In this case, Plaintiffs ask the Court to adopt the design illustrated in the figures of the

Design Patent.  (ECF No. 6, p. 51).  They also argue that no aspects of the Design Patent should

be factored out for functionality because they are all ornamental.  (ECF No. 6, pp. 50–52).

Plaintiffs add that the non-functionality of the design is "evidenced by the many alternative

design choices available for achieving the 'functions.'"   (*Id.* at p. 52).   While Plaintiffs admit that the Design Patent may contain "some functional elements," such as the Design Patent's elements of "hold[ing] a handbag," they argue those aspects of the Design Patent are also ornamental and therefore properly included in the construed design claim.  (*Id.* at p. 50).

The Design Patent claims "[t]he ornamental design for a handbag hanger hook, as shown and described" in Figures 1–8 of Exhibit 3B.  (ECF No. 2-6, p. 2).  Each of the figures located in the Design Patent are easily discernable.  (*Id.* at p. 2–10).  As such, the Court will not undertake a detailed written description of the claimed design and instead will rely on these figures.

The Court must also identify whether any features are "driven purely by utility" functionality and need to be factored out.  *See Richardson*, 597 F.3d at 1293–94.  This is where *Richardson* and *OddzOn* are instructive.  The functional purpose of the Tote Hanger is for consumers to hang and organize their handbags on closet rods.  (ECF No. 2, pp. 2–3).  The Tote Hanger incorporates two primary utilitarian elements—the top of the hook and the bottom of the hook—to accomplish this purpose.  Anyone seeking to design a handbag hanger hook will incorporate a top hook to attach to a rod-type structure that will support the weight of a handbag. The same is true of the bottom hook, which is needed to hold the handbag in place.  Thus, the Tote Hanger's functional purpose dictates the concept of attaching the two hooks together. Because there is a functional aspect, the concept of two attached hooks must be excluded from the scope of the claimed design.

Additionally, the functional purpose of the Tote Hanger dictates the vertical configuration of the top and bottom hooks due to the necessity of having to place the hook that attaches to a rod-type structure above the bottom hook that holds the handbag.  The vertical configuration of the two hooks supports the weight of a handbag without the top hook slipping from the rod.

Without this configuration, a handbag hook would not be able to support handbags without falling off the rod structure.  If the bottom hook was structured in a different direction, such as 90 degrees from the center of the two hooks, the weight of the handbag would pull the top hook of the rod.   The scope of the claimed design, therefore, also does not include the vertical configuration as utilized in the Tote Hanger.

The Design Patent, however, still protects the ornamental features of the Tote Hanger's top and bottom hooks, which include, among other non-functional features, the shape of the hooks, the flare out of the top hook's tip, the 90-degree offset of the top and bottom hooks, and the spheres on the end of each hook.  None of these specific features affect the functionality of the Tote Hanger.  For example, differently shaped geometrical objects may be placed on each end of the hooks without adversely affecting the Tote Hanger's function.  Plaintiffs' claimed design in those respects has ornamental considerations that do not appear "driven purely by utility." *Richardson*, 598 F.3d at 1294.  Accordingly, the Court narrows the construction of the Design Patent by filtering out the purely functional elements, the two-hook concept and vertical configuration.

b.  *Infringement*

Plaintiffs claim they are likely to prevail on their patent infringement claim because, under the applicable test, an ordinary observer would be deceived into believing the Accused Product is the same as the Tote Hanger.  (ECF No. 6, p. 52).  The ordinary observer test is the "sole test for determining" whether infringement of a design patent occurred.  *Egyptian Goddess, Inc.*, 543 F.3d at 678.  The test asks

> if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871).

Under this test, "infringement will not be found unless the accused article embodies the patented design or any colorable imitation thereof." *Egyptian Goddess, Inc.*, 543 F.3d at 678 (internal quotation marks and citation omitted). An ordinary observer is deceived "[a]s a result of similarities in the overall design, not of similarities in ornamental features considered in isolation." *Amini Innovation Corp.*, 439 F.3d at 1372. A patentee cannot meet its burden if the claimed and accused designs are "plainly dissimilar." *Id.* If the claimed and accused designs "are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art." *Id.*

The test also provides that the ordinary observer is familiar with prior art. *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010). "When the differences between the claimed and accused designs are viewed in light of the prior art, the attention of the hypothetical ordinary observer may be drawn to those aspects of the claimed design that differ from the prior art." *Id.* "If the claimed design is close to the prior art designs, small differences between the accused design and the claimed design assume more importance to the eye of the hypothetical ordinary observer." *Id.*

AE asserts that the protected design features of the Tote Hanger "are visually distinct and different from the design" features of the Accused Product. (ECF No. 48, p. 2). AE explains the Accused Product lacks a "corkscrew twist in the middle of the hook and [] ball-shaped ends," which exist on Plaintiffs' claimed design. (*Id.* at p. 3). According to AE, these differences take the Accused Product outside the scope of the Design Patent. (*Id.*).

Plaintiffs argue that the Accused Product is "deceptively similar" to their claimed design. (ECF No. 6, p. 52). Even if functional elements are filtered out and the prior art is considered, Plaintiffs aver an ordinary observer would find the two products have a "strikingly similar overall visual effect that is essentially indistinguishable." (*Id.*). From their perspective, any element of their claimed design that may be found to be purely functional does not contribute to the overall visual effect of the patented design. (*Id.*).

Even if the claimed design and accused design appear substantially similar, "the patentee must show that the perceived similarity is based on the ornamental features of the design." *OddzOn Prods, Inc.*, 122 F.3d at 1405. After filtering out the functional elements of the Design Patent and applying the ordinary observer test, the Court disagrees with Plaintiffs that they have shown a likelihood of substantial similarity in the claimed design and the accused design. Instead, a considerable question exists as to whether an ordinary observer would find that the Tote Hanger and Accused Product have a similar overall visual effect. Accordingly, Plaintiffs have failed to show a reasonable likelihood of success on the infringement issue.

The Court begins its infringement analysis by conducting a side-by-side study of the Design Patent (on the left) and the Accused Product (on the right). *See Crocs, Inc.*, 598 F.3d at 1304.





AccEneus 12 R

FIG. 1





41.8mm / 1.65 in

104.8mm / 4.1 in

FIG. 2

13



FIG. 5

FIG. 4

(ECF No. 6, p. 21); (ECF No. 48, p. 3).

These side-by-side comparisons of the claimed and accused designs do not suggest to the Court that an ordinary observer would be deceived into believing the accused design is the same as the one claimed by Plaintiffs. The Court acknowledges that the designs have similarities when viewed from a general perspective. But resemblance from this perspective is not enough to prove infringement. *See Ethicon Endo-Surgery*, 796 F.3d at 1336. It is well established that

14

functional components must be factored out at this general conceptional level.  *See id*.  When left

to compare the remaining ornamental features of the two designs, as a whole, there is a

substantial question of whether the claimed and accused designs are plainly dissimilar.

After comparing the overall visual effect of the two products, the most obvious difference

lies with the center of each handbag hook.  Applying the level of attention an ordinary observer

would to these designs, the human eye is immediately drawn to the contrasting corkscrew-like

center of the Tote Hanger against the laterally bent center of the Accused Product.  Even if the

pictures of the Tote Hanger and the Accused Product were mixed randomly, an ordinary

observer could quickly restore them to their original order upon viewing the center of the parties'

handbag hooks.

Other differences between the two products include the shape of the bottom hook and

their finished ends.  As to the differences in hook shape, the Tote Hanger's bottom hook is U-

shaped and connected to the center of the hook at an approximate 45-degree angle.  In contrast,

the Accused Product's bottom hook is crescent-shaped and connected to the center of the hook at

an approximate 20-to-30-degree angle.  The exact degree of the bend is not consequential to the

ordinary observer test.  Instead, what is critical is that an ordinary observer would notice how the

Accused Product's bottom hook is bent in a more open-face manner than the Tote Hanger's.

When it comes to the finished ends of the parties' hanger hooks, the Tote Hanger has

sphere-shaped caps compared to the tube-like caps on the Accused Product.  Additionally, the

top hook of the Tote Hanger flairs at its tip, whereas the Accused Product's tip does not.

Considering these dissimilarities, Plaintiffs have not shown that an ordinary observer would be

deceived into mistakenly purchasing the Accused Product instead of the Tote Hanger.  Although

the designs contain other minor ornamental variations, they are not significant enough to change

the overall visual impression of the designs. *See, e.g., Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1243 (Fed. Cir. 2009) ("The mandated overall comparison is a comparison taking into account significant differences between the two designs, not minor or trivial differences that necessarily exist between any two designs that are not exact copies of one another."). Accordingly, the Court concludes that Plaintiffs have not shown a likelihood that the accused design is substantially the same as their claimed design.

### 2. Irreparable Harm

To meet the requirements for irreparable harm, the party seeking relief must establish (1) "that absent an injunction, it will suffer irreparable harm" and (2) "that a sufficiently strong causal nexus relates the alleged harm to the alleged infringement." *Apple Inc. v. Samsung Electronics Co.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012) ("*Apple II*") (citations omitted). In doing so, it must also clearly show "a likelihood of substantial and immediate irreparable injury." *Id.* "[C]onclusory statements and theoretical arguments" are not enough to show irreparable harm. *Apple, Inc. v. Samsung Electronics Co.*, 678 F.3d 1314, 1325 (Fed. Cir. 2012) ("*Apple I*"). Merely showing potential lost sales or some lost market share does not show irreparable harm either. *Id.* at 1324–25; *Illinois Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 683 (Fed. Cir. 1990).

For the casual nexus prong, the Court must determine to "what extent the harm resulting from selling the accused product can be ascribed to the infringement." *Apple II*, 695 F.3d at 1375. "The causal nexus requirement ensures that an injunction is only entered against a defendant on account of a harm resulting from the defendant's wrongful conduct, not some other reason." *Apple Inc. v. Samsung Electronics Co.*, 809 F.3d 633, 640 (Fed. Cir. 2015) ("*Apple*

**Appx016**

*III*"). In all, the Plaintiffs have failed to show that they will be irreparably harmed absent the grant of injunctive relief.

Plaintiffs assert that AE's "competing substandard [i]nfringing [p]roduct" has diminished their profits, brand value, market share, reputation for quality, rapport with current customers, and allurement to new customers. (ECF No. 6, p. 42). As a result, Plaintiffs argue they will suffer irreparable harm through AE's alleged infringing activity. (*Id.* at p. 42). The Court finds that Plaintiffs have failed to adduce sufficient evidence to demonstrate irreparable harm.

As a threshold matter, Plaintiffs' allegations that AE's infringing conduct harms their profits, consumer relationships, brand value, goodwill, and quality reputation are nothing more than conclusory and theoretical. (*Id.* at pp. 43–45). While Plaintiffs offer some case law recognizing this type of harm, they offer no concrete evidence to support their position that they likely will suffer irreparable harm without a preliminary injunction. *See Apple I*, 678 F.3d at 1325. For example, Plaintiffs must demonstrate that they have a reputation for quality that could be damaged before asserting AE's alleged infringing conduct will cause them irreparable harm. Without supportive allegations, the Court cannot agree with Plaintiffs that these alleged harms constitute irreparable harm or that there is a casual nexus between them and the alleged infringement.

Two of Plaintiffs' other arguments rest on the unsupported allegations that AE's product is inferior and that consumers confuse them. First, Plaintiffs claim that a finding of irreparable harm is supported by the fact that the market for handbag hangers is new. (ECF No. 6, p. 44). With AE flooding this new market with inferior products, Plaintiffs assert that consumers will assume all similar products are also of poor quality. (ECF No. 6, p. 44). Second, Plaintiffs aver that they "cannot compete" with the loss of pricing power caused by AE's "substandard"

product.  (ECF No. 6, p. 44).  Although both are valid claims on the surface, the Court cannot find any evidence in the record suggesting that the Accused Product is constructed with sub-quality materials or that consumers confuse them.  *See Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 954 (Fed. Cir. 1990) (holding patentee had not shown irreparable harm after failing to provide "objective, empirical information—surveys, interviews, or other material").

For its market loss allegation, Plaintiffs provide nothing more than pure speculation. (ECF No. 6, p. 43) ("Unless the Defendants are enjoined, the Plaintiffs will lose their hard-earned market share, which further supports a finding of irreparable harm.").  Under the Federal Circuit's standard, lost market share must be demonstrated.  *Apple I*, 678 F.3d at 1324–25.  If preliminary injunctions were granted for speculative loss of market share, "every patent case where the patentee practices the invention" would be granted one.  *Automated Merch. Sys., Inc. v. Crane Co.*, 357 F. App'x 297, 301 (Fed. Cir. 2009) (internal quotations and citation omitted).

As to Plaintiffs' argument that the parties' products compete, the Court does not doubt that AE's offering of the Accused Product could have some impact on the Tote Hanger's sales and profits.  (ECF No. 6, pp. 42, 44).  Plaintiffs' speculation that AE's alleged infringing conduct will cause Plaintiffs to lose sales is not enough.  Federal Circuit precedent is clear that potential lost sales do not demonstrate irreparable harm.  *See Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006).  Additionally, Plaintiffs have offered no evidence that would show the extent of their competition and allow the Court to make a finding of whether irreparable harm is likely to occur or that monetary damages are inadequate.

The same is true for price erosion.  Plaintiffs claim that AE's infringing conduct will lead to price erosion after consumers become accustomed to seeing the Accused Product's lower

advertised prices. (ECF No. 6, p. 44). But again, Plaintiffs fail to point to anything more than conclusory statements that this would be likely to occur. *See Automated Merch. Sys., Inc.*, 357 F. App'x at 301 (rejecting the proposition that conclusory statements can support a finding of irreparable harm caused by price erosion).

Without concrete evidence to support its argument, the Court concludes that Plaintiffs have failed to show irreparable harm. Accordingly, the Court does not need to consider the second casual nexus prong, given the unsupported allegations of irreparable harm. Even so, Plaintiffs have failed to provide evidence that would establish a connection between AE's infringement and the purchasing decisions of new and current consumers. Thus, Plaintiffs have not shown the Court that their claimed injuries rise to the level of irreparable harm.[2]

## IV. CONCLUSION

For the forgoing reasons, the Court finds that Plaintiffs have not met their burden of demonstrating that they are entitled to the extraordinary relief of an injunction. Plaintiffs' motion as to AE will be denied by Order of Court to follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

Date: 1/26/24

---

[2] Having found that Plaintiffs have not established a likelihood of success on the merits and irreparable harm, it is unnecessary for the Court to consider the remaining two factors—the balance of hardships or the public interest. *See Polymer Technologies, Inc. v. Bridwell*, 103 F.3d 970, 973–74 (Fed. Cir. 1996). The balance of hardships and public interest factors both weigh in Plaintiffs' favor. If AE is infringing the Design Patent and Plaintiffs could provide a clear showing of a likelihood of immediate irreparable harm, it would be unfair to allow them to profit from their unlawful conduct. Similarly, the public is generally served by the enforcement of patent rights. As such, the last two preliminary injunction factors favor Plaintiffs. These factors, however, are not sufficient to grant Plaintiffs a preliminary injunction. Because the Court finds that Plaintiffs have not established both likelihood of success on the merits and irreparable harm, they cannot be granted a preliminary injunction.

19

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACKI EASLICK, LLC, *et al*,<br><br>       *Plaintiffs*,<br><br>v.<br><br>CJ EMERALD, *et al*,<br><br>       *Defendants*. | Civil Action No. 2:23-cv-2000<br><br>Hon. William S. Stickman IV |

## **ORDER OF COURT**

AND NOW, this 26th day of January 2024, IT IS HEREBY ORDERED that Plaintiffs' Motion for Preliminary Injunction (ECF Nos. 4 and 46) IS GRANTED IN PART AND DENIED IN PART.

For the reasons set forth in the Memorandum Opinion filed this same day, IT IS HEREBY ORDERED that Plaintiffs' motion as to Defendant AccEncyc US is DENIED.

On December 22, 2023, the Court entered a Consent Order between Plaintiffs and the Maybeller Defendants (ABEL TANG, ATRISS, BESTOYARD, BONNIE CHILD, COLORED FLAG, ENTERTAINMENT FIRST, FACING THE OCEAN, FEPERIG, FULL OF STARS.MIN, GARDEISH, HEMPHILL HEN, HERLLOY, JAGOGH YSON, JONERCEY, KARIN YANG, LIMICOUNTS, LIPU HOOKER, LMPOSING, M.METEORITE, MAYBELLER, NISHUNA, PATRICK YAO, PBFZ, QIKITA, ROBITENO, SHANNON WENHA, SI PEIHONG, SINUOXIANG, SOMIROW, SURMOUNTY, THINKCREATORS, THOMAS ZACK YANG, TRACY ZHONG, TRAVELNA, VITONG, ZARA LEI, ZHONG ROY).  These parties agreed to the entry of a preliminary injunction and asset restraint order. (ECF No. 56).  Thus Plaintiffs' motion as to these Defendants has already been granted.

1

IT IS HEREBY ORDERED that Plaintiffs' motion as to Defendants CJ EMERALD, FITNICE OFFICIAL, HOME DEPUTY, LITEVISO, MZEKGXM, NEZA-US, PENGWH SHOP, UME SPORTS, WEKIWGOT-US, and ZGCZZ is GRANTED as these Defendants have not contested the entry of a preliminary injunction.  By separate Order of Court a preliminary injunction will issue.  The Court notes that a Motion for Default Judgment (ECF No. 72) is currently pending against these Defendants.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

**Appx021**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JACKI EASLICK, LLC, *et al*,

        *Plaintiffs*,

v.

CJ EMERALD, *et al*,

        *Defendants*.

Civil Action No. 2:23-cv-2000

Hon. William S. Stickman IV

## **MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

      Pending before the Court is a Motion for Reconsideration (ECF No. 85) (the "Motion") filed by Plaintiffs, Jacki Easlick, LLC ("Easlick") and JE Corporate LLC ("JE") (collectively, "Plaintiffs") on February 13, 2024.[1]  Plaintiffs filed the Motion seeking reconsideration of the Court's January 26, 2024 order (ECF No. 76) (the "Preliminary Injunction Order") and Memorandum Opinion (ECF No. 75) ("Preliminary Injunction Opinion") denying their motion for a preliminary injunction (ECF No. 4) ("Preliminary Injunction Motion").  In the Preliminary Injunction Opinion, the Court concluded that Plaintiffs, the moving parties, failed to make the requisite showing for the two gateway factors for a preliminary injunction, (1) likelihood of success on the merits and (2) irreparable harm.  (ECF No. 75, p. 19).  The Motion asks the Court

---

[1] On February 26, 2024, Plaintiffs notified the Court that they filed an appeal to the Court of Appeals for the Federal Circuit.  (ECF No. 91).  The Court, however, still has jurisdiction pursuant to Rule 4(a)(4)(B)(i) of the Federal Rules of Appellate Procedure.  *See* FED. R. APP. P. 4(a)(4)(B)(i) ("If a party files a notice of appeal after the court … enters a judgment--but before it disposes of any motion listed in Rule 4(a)(4)(A)--the notice becomes effective to appeal a judgment or order … when the order disposing of the last such remaining motion is entered.").

1

to reconsider these two conclusions on the grounds of new evidence and clear error of law.  (ECF No. 85, pp. 4–6).  For the following reasons, the Court will deny the Motion.

## I.   STANDARD OF REVIEW

Motions for reconsideration must be strictly reviewed and sparingly granted.  *See Williams v. City of Pittsburgh*, 32 F. Supp. 2d 236, 238 (W.D. Pa. 1998).  Parties may not use such motions to "relitigate issues the court has already decided," *Id.*, or to "raise new arguments or evidence that could have been proffered prior to the issuance of the order in question," *Qazizadeh v. Pinnacle Health Sys.*, 214 F. Supp. 3d 292, 295–96 (M.D. Pa. 2016).  Rather, parties may only request that a court revisit one of its prior decisions if justice so requires.  *See Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010) ("The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." (cleaned up)).   In considering whether reconsideration is appropriate, courts are guided by the applicable Federal Rule of Civil Procedure—Rule 54(b), 59(e), or 60(b).

Motions for reconsideration are usually brought under Rule 59(e) or 60(b).  *See Dayoub v. Penn-Del Directory Co.*, 90 F. Supp. 2d 636, 637 (E.D. Pa. 2000).  To seek reconsideration under Rule 59(e), a moving party must demonstrate at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.  *See Howard Hess Dental*, 602 F.3d at 251 (citations omitted).  Similarly, to seek reconsideration under Rule 60(b), a party must prove one of six grounds enumerated in the rule itself.  *See* FED. R. CIV. P. 60(b)(1)–(6); *see also United States v. Fiorelli*, 337 F.3d 282, 288 (3d Cir. 2003).  These rules, however, only provide

2

**Appx023**

for reconsideration of final judgments, not interlocutory orders. *See Dayoub*, 90 F. Supp. 2d at 637.

To seek reconsideration of an interlocutory order, a party must file a motion under Rule 54(b). *See Qazizadeh*, 214 F. Supp. 3d at 295 ("[M]otions for reconsideration of interlocutory orders—whether denials of summary judgment, grants of partial summary judgment, or any other non-final orders—are motions under Federal Rule of Civil Procedure 54(b)."). District courts generally possess more discretion to reconsider interlocutory orders than to reconsider final judgments. *See Foster v. Westchester Fire Ins. Co.*, 2012 WL 2402895, at *4 n.1 (W.D. Pa. June 26, 2012). Accordingly, "reconsideration of [interlocutory] orders may be had even if the movant cannot show" one of the particular grounds permitting reconsideration of final orders. *See Qazizadeh*, 214 F. Supp. 3d at 295. Nevertheless, "the movant must still establish good cause for why the court should revisit its prior decision." *Id.* And, pursuant to the law of the case doctrine, courts should only "grant motions for reconsideration in 'extraordinary circumstances.'" *Foster*, 2012 WL 2402895, at *4 n.1 (quoting *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 438–39 (3d Cir. 2009)). The extraordinary circumstances permitting reconsideration of prior decisions "align neatly" with the three grounds justifying reconsideration under Rule 59(e). *Id.*; *see also A&H Sportswear Co., Inc. v. Victoria's Secret Stores, Inc.*, 2001 WL 881718, at *1 (E.D. Pa. May 1, 2001) ("Courts tend to grant motions for reconsideration sparingly and only upon the grounds traditionally available under Fed. R. Civ. P. 59(e).").

## II. FACTUAL AND PROCEDURAL BACKGROUND

On December 18, 2023, Plaintiffs filed the Preliminary Injunction Motion requesting the Court enjoin Defendant AccEncyc US ("AE") from its unauthorized "promoting, advertising,

distributing, offering for sale, and selling" of Plaintiffs' patented TOTE HANGER® brand handbag hanger hook ("Tote Hanger") associated with U.S. Patent No. D 695,526 S ("Design Patent").  (ECF No. 2, pp. 2, 5, 25); (ECF No. 4); (ECF No. 22); (ECF No. 46).  Plaintiffs claimed that AE infringed on the Design Patent by offering knock-off versions ("Accused Product") of the Tote Hanger on online marketplaces.  (ECF No. 2, pp. 2–3).

The next day, the Court heard oral argument at a videoconference injunction hearing ("Preliminary Injunction Hearing") on the Preliminary Injunction Motion where the parties argued whether the Court should impose a preliminary injunction for the alleged design-patent infringement and pre-judgment asset restraint.[2]   (ECF No. 65).   During the Preliminary Injunction Hearing, the Court asked counsel for Plaintiffs if they had "any documentary evidence or witnesses to present."  (*Id.* at p. 3).  Plaintiffs' counsel responded, "[i]n terms of evidence, we're going to rely on what was submitted with our papers … [and are] pleased to answer any questions the Court may have."  (*Id.*).

In its ensuing Preliminary Injunction Order, the Court denied the Preliminary Injunction Motion.  (ECF No. 76).  The Court held that Plaintiffs had not met their burden of establishing a likelihood of success on the merits and irreparable harm, two critical factors that a movant must demonstrate for a court to grant a preliminary injunction.  (ECF No. 75, pp. 1, 19 n.2).  As to the likelihood of success on the merits, the Court compared the ornamental features of the two

---

[2] Counsel for the Maybeller Defendants (ABEL TANG, ATRISS, BESTOYARD, BONNIE CHILD, COLORED FLAG, ENTERTAINMENT FIRST, FACING THE OCEAN, FEPERIG, FULL OF STARS.MIN, GARDEISH, HEMPHILL HEN, HERLLOY, JAGOGH YSON, JONERCEY, KARIN YANG, LIMICOUNTS, LIPU HOOKER, LMPOSING, M.METEORITE, MAYBELLER, NISHUNA, PATRICK YAO, PBFZ, QIKITA, ROBITENO, SHANNON WENHA, SI PEIHONG, SINUOXIANG, SOMIROW, SURMOUNTY, THINKCREATORS, THOMAS ZACK YANG, TRACY ZHONG, TRAVELNA, VITONG, ZARA LEI, ZHONG ROY) appeared at oral argument.  (ECF No. 65).  Plaintiffs and the Maybeller Defendants entered into a consent order for a preliminary injunction on December 22, 2023.  (ECF No. 56).

4

**Appx025**

designs and found "a substantial question [exists] of whether the claimed and accused designs are plainly dissimilar." (*Id.* at p. 15).  As to irreparable harm, the Court concluded that Plaintiffs failed to provide concrete evidence to support a showing of irreparable harm.  (*Id.* at p. 19).

Subsequently, on February 13, 2024, Plaintiffs filed the Motion, petitioning the Court to reconsider its Preliminary Injunction Order and Opinion, vacate its Preliminary Injunction Order, and grant their Preliminary Injunction Motion.  (ECF No. 85).

### III.   ANALYSIS

Plaintiffs seek reconsideration under Rule 54(b).  The Court holds that there is no reason to disturb its prior ruling.  No intervening change in the controlling law has occurred, and there is no clear error of law or fact that the Court must correct.  While Plaintiffs believe that "new evidence" has come to light that was not available when the Court adjudicated their Preliminary Injunction Motion, and that the new evidence warrants the imposition of a preliminary injunction against AE, the Court disagrees.  The United States Court of Appeals for the Third Circuit has made it clear that "'new evidence,' for reconsideration purposes, does not refer to evidence that a party ... submits to the court after an adverse ruling.  Rather, new evidence in this context means evidence that a party could not earlier submit to the court because that evidence was not previously available." *Howard Hess Dental*, 602 F.3d at 252.

### A.   The Court Will Not Review Plaintiffs' New Evidence

Plaintiffs argue that the Court should reconsider their Preliminary Injunction Motion because, at the time of the Preliminary Injunction Hearing, AE had "submitted its opposition after the response period expired," and, therefore, AE "prevent[ed] Plaintiffs from replying *before* the hearing." (ECF No. 85, p. 4) (emphasis added).  A motion for reconsideration "may not be used as a means to argue new facts or issues that inexcusably were not presented to the

court in the matter previously decided." *Romero v. Allstate Ins.*, 1 F. Supp. 3d 319, 420 (E.D. Pa. 2014). "[N]ew evidence, for reconsideration purposes, does not refer to evidence that a party … submits to the court after an adverse ruling. Rather, new evidence in this context means evidence that a party could not earlier submit to the court because that evidence was not previously available." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011). "Where evidence is not newly discovered, a party may not submit that evidence in support of a motion for reconsideration." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985).

Plaintiffs assert that AE's late filing of its opposition caused only evidence of photographs and drawings to be available to the Court at the time of the Preliminary Injunction Hearing. (ECF No. 85, p. 4). Specifically, Plaintiffs argue that the physical evidence, *i.e.*, tangible copies of the hooks at issue, were not in the Court's hands. (*Id.*). They also assert that Easlick's testimony about irreparable harm was not available to the Court. (*Id.*). For both assertions, Plaintiffs fail to explain how the physical evidence or Easlick's irreparable harm testimony was unavailable to them before they filed their Preliminary Injunction Motion and before the Preliminary Injunction Hearing. And the Court sees no reason why Plaintiffs could not provide the physical evidence or testimony at either juncture. At best, Plaintiffs regret their decision to rest on what they "submitted with [their] papers." (ECF No. 65, p. 3).

When litigating their Preliminary Injunction Motion, Plaintiffs had the burden to show that the Accused Product infringed upon the Tote Hanger and that AE's infringement caused Plaintiffs to suffer irreparable harm, but they failed to meet their burden. *See Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 526 (3d Cir. 2018). With their Preliminary Injunction Motion, Plaintiffs submitted pictures of the handbag hanger hooks at issue and a declaration from Easlick. (ECF No. 8); (ECF No. 11). Plaintiffs provided nothing more for their Preliminary

6

Injunction Motion or at the Preliminary Injunction Hearing.  Plaintiffs' proffering of the physical evidence and Easlick's testimony now is nothing more than evidence that was available before the Preliminary Injunction Opinion and Preliminary Injunction Order.  None of this evidence constitutes new evidence.  For these reasons, the Court does not find that the evidence warrants reconsideration.[3]

### B.  The Court Did Not Err in Applying the Ordinary Observer Test

Plaintiffs assert that the Court erred in its Preliminary Injunction Opinion and Order by (1) mistakenly focusing on the individual elements of the Tote Hanger instead of the overall appearance of the patented design; and (2) failing to compare the two designs in view of the prior art.  (ECF No. 85, p. 4).  Motions for reconsideration "address[] only factual and legal matters that the Court may have overlooked.  It is improper on a motion for reconsideration to ask the Court to rethink what it had already thought through—rightly or wrongly." *Gibbs-Squires v. Cosby*, No. 16-768, 2017 WL 5515952, at *1 (E.D. Pa. March 17, 2017) (citation and internal quotation marks omitted).  Ultimately, the Court disagrees with Plaintiffs as they have not demonstrated that the Court erred in applying the ordinary observer test.

First, Plaintiffs contend that, when applying the ordinary observer test, the Court overlooked the overall appearance of the patented design in favor of individual elements.  (ECF No. 85, p. 4).  From Plaintiffs' perspective, the Court improperly eliminated structural elements in construing the scope of their design patent claim.  (*Id.*).  By discounting these structural elements, Plaintiffs assert that the Court employed an element-by-element comparison instead of analyzing the overall visual impressions of the claimed and accused designs.  (*Id.*).

---

[3] Even if the Court was willing to consider the physical copies of the handbag hanger hooks, the Court would find that this alleged "missing physical evidence" confirms its infringement analysis in the Preliminary Injunction Opinion.

The Court disagrees.  To start, the Court did not eliminate any structural elements *entirely* from Plaintiffs' claim.  The Court only excluded the concept of two attached hooks and the vertical configuration of the top and bottom hooks because they were driven purely by utility.[4] (ECF No. 75, p. 9).  Specifically, Plaintiffs contend that the Court excluded the 90-degree offset of the top and bottom hooks and the hook shapes.  (ECF No. 85, p. 5) ("[T]he 90[-]degree bend … is the aesthetic feature… [,] and the hook shapes are not functional.").  Yet, the Court did not factor out either of these ornamental features.  (ECF No. 75, p. 10) ("The Design Patent, however, still protects the ornamental features of the Tote Hanger's top and bottom hooks, which include, among other non-functional features, the shape of the hooks … [and] the 90-degree offset.").[5]

Next, the Court compared the overall impression of the two designs.  In accordance with Federal Circuit precedent, the Court began its ordinary observer analysis by conducting a side-by-side comparison of the Accused Product and the Tote Hanger to analyze the overall visual effect of the two products.  (ECF No. 75, pp. 14–15).  The Court considered how the significant differences in each design's ornamental features, when viewed together, affected the overall designs.  (*Id.* at pp. 15–16); *See Lanard Toys Ltd. v. DolgenCorp LLC*, 958 F.3d 1337, 1343

---

[4] In Easlick's "new" declaration, Plaintiffs argue that the Court's claim construction failed to consider how other products on the market are shaped differently and accomplish the same function as the Tote Hanger.  (*See* ECF No. 85-2, ¶¶ 19, 28).  The Court did not consider this evidence because Plaintiffs did not provide it initially.  As stated in Section A above, the Court will not consider new evidence that was available, and Plaintiffs could have submitted.  Based on the evidence presented, the Court's claim construction was correct.

[5] In applying the ordinary observer test, the Court did not exclude the Tote Hanger's 90-degree offset.  Instead, in considering the preliminary injunction standard, the Court discussed how the dissimilarities in the two designs impacted the products' overall visual impressions, which led the Court to its conclusion that "a substantial question [exists as to] whether the claimed and accused designs are plainly dissimilar."  (ECF No. 75 at p. 15).  In turn, the Court did not find that Plaintiffs demonstrated that an ordinary observer would "more likely than not" be deceived into mistakenly purchasing the Accused Product instead of the Tote Hanger.

(Fed. Cir. 2020) ("Under the 'ordinary observer' test, a court must consider the ornamental features and analyze how they impact the overall design.")

As the Court explained in the Preliminary Injunction Opinion, upon viewing the claimed and accused designs, as a whole, an ordinary observer would immediately gravitate to the center of the hooks as they are prominent and distinctive. (ECF No. 75, pp. 15) ("After comparing the overall visual effect of the two products, the most obvious difference lies with the center of each handbag hook. … [T]he human eye is immediately drawn to the contrasting corkscrew-like center of the Tote Hanger against the laterally bent center of the Accused Product.").[6]  As the eye drifts from the center of the hooks, other dissimilarities in ornamental features become immediately noticeable, such as the shapes of the bottom hooks, the "sphere-shaped caps compared to the tube-like caps on the Accused Product," and the Tote Hanger's flared tip.  (*Id.* at p. 15).

The Court did not find any of the ornamental dissimilarities to be minor or trivial.  *See, e.g.*, (*Id.* at p. 15) ("In contrast, the Accused Product's bottom hook is crescent-shaped and connected to the center of the hook …. [W]hat is critical is that an ordinary observer would notice how the Accused Product's bottom hook is bent in a more open-face manner than the Tote Hanger's.").  Instead, the Court found them to be significant differences that were integral to their respective designs and impacted the ordinary observer's overall visual impressions.  (ECF No. 75, pp. 15–16) (citing *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1243 (Fed. Cir. 2009) ("The mandated overall comparison is a comparison taking into account significant differences between the two designs, not minor or trivial differences that necessarily

---

[6] *See also* (ECF No. 75, p. 15) ("Even if the pictures of the Tote Hanger and the Accused Product were mixed randomly, an ordinary observer could quickly restore them to their original order upon viewing the center of the parties' handbag hooks.").

9

**Appx030**

exist between any two designs that are not exact copies of one another.")).  As a result, the Court determined that Plaintiffs did not show that the accused design "more likely than not" infringes upon the claimed design.  (ECF No. 75, pp. 6, 16).

Second, Plaintiffs claim that the Court did not consider the prior art in its initial infringement analysis.  (ECF No. 85, p. 1).  The Court did not analyze the prior art because it determined that a substantial question exists as to whether the Tote Hanger and the Accused Product are "plainly dissimilar," which is not enough to show that there is a likelihood of substantial similarly between the two designs.  (ECF No. 75, p. 15) "Where the claimed and accused designs are 'sufficiently distinct' and 'plainly dissimilar,' the patentee fails to meet its burden of proving infringement as a matter of law." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015) (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008)).  Therefore, the Court had no reason to consider the prior art in its initial infringement analysis.  Plaintiffs desire for the Court to rethink how it applied the ordinary observer test is not a proper basis for a motion for reconsideration.

Even if the Court had considered the prior art, the outcome of the Preliminary Injunction Order and Preliminary Injunction Opinion would not have changed.  If the claimed and accused designs are not plainly dissimilar, and prior art exists, "resolution of the question of whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art." *Samiam Group, LLC v. Coopersburg Assocs., Inc.*, 650 F. Supp. 3d 295, 312 (E.D. Pa. 2023) (citation omitted).  "When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art." *Egyptian Goddess, Inc.*, 543 F.3d at 676.

**Appx031**

Here, the prior art submitted by Plaintiffs differs from the claimed design in many respects.

| '924 Design | '446 Design | Patented Design |
|---|---|---|
|  |  |  |

(ECF No. 11, p. 14).  Those ornamental dissimilarities include the shapes of the hooks, the finished ends, flared tips, and the downward bent center of the hook.  Each of these ornamental dissimilarities are some of the same ornamental dissimilarities that the Court held impacted the ordinary observer's perception of the overall claimed design against the accused design.  With the attention of the hypothetical ordinary observer still drawn to these significant differences, as noted in the Preliminary Injunction Opinion, re-application of the ordinary observer test would not have changed the overall visual effect of the two designs.  As such, Plaintiffs have not shown that an ordinary observer would "more likely than not" be deceived into mistakenly purchasing the Accused Product instead of the Tote Hanger.  Plaintiffs are not entitled to preliminary injunctive relief.

Appx032

## IV. CONCLUSION

For these reasons, the Court holds that reconsideration is not appropriate.  It will deny Plaintiff's motion by Order of Court to follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

Date:    4-17-24

12

**Appx033**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACKI EASLICK, LLC, *et al*, | |
| Plaintiffs, | Civil Action No. 2:23-cv-2000 |
| v. | Hon. William S. Stickman IV |
| CJ EMERALD, *et al*, | |
| Defendants. | |

**ORDER OF COURT**

AND NOW, this **17** day of April 2024, for the reasons set forth in the Memorandum Opinion filed this day, IT IS HEREBY ORDERED that the Motion for Reconsideration (ECF No. 85) is DENIED.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

US00D695526S

(12) **United States Design Patent**      (10) **Patent No.:**      **US D695,526 S**

Easlick      (45) **Date of Patent:**    ∗∗  **Dec. 17, 2013**

(54) **HANDBAG HANGER HOOK**

(76) Inventor:  **Jacklyn S Easlick**, Rye, NY (US)

(∗∗) Term:  **14 Years**

(21) Appl. No.: **29/431,801**

(22) Filed:  **Sep. 11, 2012**

(51) **LOC (9) Cl.**  .................................................. **03–01**

(52) **U.S. Cl.**
  USPC  ............................................ **D3/328**; D8/367

(58) **Field of Classification Search**
  USPC ...................... D3/328; D8/367; 248/302–303
  See application file for complete search history.

(56)      **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 5,575,446 | A | ∗ 11/1996 | Swenson et al. | .............. 248/304 |
| D475,278 | S | ∗ 6/2003 | Williams | ........................ D8/367 |
| D493,092 | S | ∗ 7/2004 | Kalat | ............................ D8/367 |
| D560,924 | S | ∗ 2/2008 | Walker | .......................... D6/396 |
| D644,438 | S | ∗ 9/2011 | Brucker | ......................... D3/328 |

∗ cited by examiner

*Primary Examiner* — Holly Baynham
(74) *Attorney, Agent, or Firm* — Sinorica, LLC

(57)      **CLAIM**

The ornamental design for a handbag hanger hook, as shown and described.

**DESCRIPTION**

FIG. **1** is a perspective view of the handbag hanger hook;
FIG. **2** is a front elevational view thereof;
FIG. **3** is a rear elevational view thereof;
FIG. **4** is a right-side elevational view thereof;
FIG. **5** is a left-side elevational view thereof;
FIG. **6** is a bottom plan view thereof;
FIG. **7** is a top plan view thereof; and,
FIG. **8** is a reduced scale perspective view thereof wherein the top hook is hung on a rod, with a handbag hanging from the bottom hook.
The broken line showing the rod and handbag in FIG. **8** is included for the purpose of showing environmental structure and forms no part of the claimed design.

**1 Claim, 8 Drawing Sheets**





FIG. 1



FIG. 2



FIG. 3



FIG. 4



FIG. 5



FIG. 6



FIG. 7

Case 2:23-cv-02000-WSS   Document 2-6   Filed 11/20/23   Page 10 of 10



FIG. 8

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e) because the Brief contains **6,450** words, excluding the parts exempted by Federal Rule of Appellate Procedure 27(d)(2) and Fed. Cir. R. 27(d), as determined by the word-counting feature of Microsoft Word.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using MS Word in a 14-point Times New Roman font.


Dated:  November 19, 2024

          /s/ Stanley D. Ference III
         Stanley D. Ference III