**2024-1538, -1826**

# United States Court of Appeals
# for the Federal Circuit

---

JACKI EASLICK, LLC, JE CORPORATE LLC,

*Plaintiffs-Appellants,*

*v.*

ACCENCYC US,

*Defendant-Appellee,*

CJ EMERALD, ET AL.,

*Defendants.*

---

*Appeal from the United States District Court for the
Western District of Pennsylvania, in Case No. 2:23-cv-02000-WSS
(Hon. William S. Stickman, IV, Judge)*

---

## BRIEF FOR DEFENDANT-APPELLEE

Timothy A. Duffy
LAW OFFICE OF TIMOTHY A. DUFFY, PC
725 W Orchard Circle
Lake Forest, Illinois 60045
(847) 530-4920
tduffy@tduffylaw.com

*Counsel for Defendant-Appellee*

JANUARY 30, 2025

## U.S. Patent No. D695,526 S

**Claim:** The ornamental design for a handbag hanger hook, as shown and described.

**Description:**
FIG. 1 is a perspective view of the handbag hanger hook;
FIG. 2 is a front elevational view thereof;
FIG. 3 is a rear elevational view thereof;
FIG. 4 is a right-side elevational view thereof;
FIG. 5 is a left-side elevational view thereof;
FIG. 6 is a bottom plan view thereof;
FIG. 7 is a top plan view thereof; and
FIG. 8 is a reduced scale perspective view thereof wherein the top hook is hung on a rod, with a handbag hanging from the bottom hook.
The broken line showing the rod and handbag in FIG. 8 is included for the purpose of showing environmental structure and forms no part of the claimed design.



FIG. 1



FIG. 2



FIG. 3



FIG. 4



FIG. 5



FIG. 6



FIG. 7



FIG. 8

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

### CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 2024-1538, 2024-1826 |
| **Short Case Caption** | Jackie Easlick, LLC, et al. v. AccEncyc US, et al. |
| **Filing Party/Entity** | AccEncyc US |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.


Date: 11/20/2024          Signature:   /s/Timothy A. Duffy

                          Name:        Timothy A. Duffy

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| AccEncyc US | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☑    None/Not Applicable          ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐    Yes (file separate notice; see below)    ☑    No    ☐    N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable          ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ..................................................................i

TABLE OF CONTENTS .......................................................................iv

TABLE OF AUTHORITIES...................................................................vi

STATEMENT OF RELATED CASES .....................................................1

JURISDICTIONAL STATATEMENT .....................................................2

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW .............3

STATEMENT OF THE CASE .................................................................4

SUMMARY OF THE ARGUMENT ......................................................11

    I.    THE DISTRICT COURT DID NOT ABUSE ITS
        DISCRETION IN DENYING EASLICK'S MOTION
        FOR A PRELIMINARY INJUNCTION ON THE BASIS
        THAT ACCENCY'S DESIGN WAS NOT
        SUBSTANTIALLY THE SAME AS THAT DISCLOSED
        IN EASLICK'S PATENT. .......................................................11

    II.    THE DISTRICT COURT DID NOT ABUSE ITS
        DISCRETION IN DENYING EASLICK'S MOTION
        FOR A PRELIMINARY INJUNCTION ON THE BASIS
        THAT SHE FAILED TO ESTABLISH THAT SHE
        WOULD SUFFER IRREPARABLE HARM ABSENT
        THE ISSUANCE OF AN INJUNCTION. .............................11

ARGUMENT ........................................................................ 13

I.    STANDARD OF REVIEW ...................................................... 13

II.   THE DISTRICT COURT DID NOT ABUSE ITS
      DISCRETION IN DENYING EASLICK'S MOTION
      FOR A PRELIMINARY INJUNCTION. ............................... 16

      A.   The District Court Did Not Abuse Its
           Discretion in Concluding that Easlick
           Failed to Demonstrate a Likelihood of
           Success on the Merits of Her Claim that
           AccEncyc's Product Infringed Her Design
           Patent. .......................................................................... 16

           1.   Construction of the Claims ................................. 17

           2.   Substantial Similarity ........................................ 20

           3.   Consideration of Prior Art ................................. 28

      B.   Easlick Failed to Demonstrate a Likelihood
           that She Would Suffer Irreparable Harm
           Absent an Injunction .................................................... 33

CONCLUSION .................................................................... 38

CERTIFICATE OF COMPLIANCE ........................................ 40

# TABLE OF AUTHORITIES

CASES

*ABC Corporation 1 v. Partnerships and Unincorporated Associations Identified on Schedule "A"*, 52 F.4th 934 (Fed. Cir. 2022) ........................................................................ 13, 14, 27, 31

*American Telephone & Telegraph Co. v. Winback & Conserve Program*, 42 F.3d 1421 (3rd Cir. 1994) .................................. 16

*Apple Inc. v. Samsung Electronics Co.*, 678 F.3d 1314 (Fed. Cir. 2012) ........................................................................ 14

*Apple Inc. v. Samsung Electronics Co.*, 695 F.3d 1370 (Fed. Cir. 2012) ........................................................................ 14

*Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314 (Fed. Cir. 2007) ...................................................... 20

*Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452 (Fed. Cir. 1997) ...................................................................... 18

*Crocs, Inc. v. International Trade Commission*, 598 F.3d 1294 (Fed. Cir. 2010) ............................................... 13, 22, 30

*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008) ............................................................... 13, 27, 28, 29

*Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571 (Fed. Cir. 1995) ............. 17

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312 (Fed. Cir. 2015) .................................................................. 21, 29

*Genetech, Inc. v. Novo Norodisk, A/S*, 108 F.3d 1361 (Fed. Cir. 1997) ........................................................................ 15

*Gorham Manufacturing Co. v. White*, 81 U.S. 511 (1871) .................... 28

*In re Mann*, 861 F.2d 1581 (Fed. Cir. 1988) ........................................... 17

*Kershner v. Mazurkiewicz*, 670 F.2d 440 (3rd. Cir. 1982) .................... 15

*Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700 (3rd Cir. 2004) ..................................................................................... 16

*Murata Machinery USA v. Daifuko Co., Ltd.*, 830 F.3d 1357 (Fed. Cir. 2016) ........................................................................... 37

*Natera, Inc. v. NeoGenomics Laboratories, Inc.*, 106 F.4th 1369 (Fed. Cir. 2024) ......................................................................... 15

*Revision Military, Inc. v. Balboa Manufacturing Co.*, 700 F.3d 524 (Fed. Cir. 2012) ................................................................. 30, 31

*Richardson v. Stanley Works, Inc.*, 597 F.3d 1288 (Fed. Cir. 2010) ................................................................................................. 17

*Roadget Business PTE, Ltd. v. The [Defendants] Identified on Schedule A*, 735 F.Supp.3d 981 (N.D. Ill. May 30, 2024) ................. 36

*Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372 (Fed. Cir. 2009) ........................................................................... 15

*Winter v National Resources Defense Council, Inc.*, 555 U.S. 7 (2008) .................................................................................... 16

OTHER AUTHORITIES

Burstein, Intelligent Design & Egyptian Goddess: A Response to Professors Buccafusco, Lemley & Masur, 68 Duke L. J. Online 94 (2019) ................................................................ 32

## STATEMENT OF RELATED CASES

No other appeal in or from the same civil action or proceeding in the originating tribunal was previously before this or any other appellate court.

## JURISDICTIONAL STATATEMENT

The District Court has jurisdiction in this case under 35 U.S.C. § 271. The District Court issued orders denying Plaintiff's motion for a preliminary injunction and reconsideration thereof on January 6, 2024, Appx020-021, and April 17, 2024, Appx034, respectively. Appellants filed timely notices of appeal on February 26, 2004, Appx643 (Case No. 24-1538), and May 14. 2024, Appx645 (Case No. 24-1826). The two appeals were consolidated on May 28, 2024 (Dkt. 19, No. 24-1538). This Court has jurisdiction over the consolidated appeals of the District Court's orders denying Plaintiff's motions under 28 U.S.C. § 1292(a)(1) and (c)(1).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.    Did the district court abuse its discretion in denying Plaintiff's motion for a preliminary injunction based on its finding that the design of Defendant's product was not such that it would deceive an ordinary observer familiar with the prior art into believing it was the same as Plaintiff's patented design?

2.    Did the district court abuse its discretion in denying Plaintiff's motion for a preliminary injunction based on its finding that Plaintiff had failed to establish that she would suffer irreparable harm absent the issuance of an injunction?

## STATEMENT OF THE CASE

On September 11, 2012, Jackie Easlick applied for, and on December 17, 2013, secured, a design patent for a "handbag hanger hook." Appx035-043 (U.S. Design Patent 695,526).

On November 20, 2023, Jackie Easlick, LLC, and JE Corporate LLC, two entities wholly owned by Ms. Easlick (collectively, "Easlick"), filed a Complaint in the Western District of Pennsylvania alleging that 67 named defendants infringed her patent by selling handbag hanger hooks that, while not exactly the same as those sold by her, nevertheless infringed upon her design as disclosed in her design patent. Appx044-079 (partially reproducing ECF No. 2 (Appx654)). One of the defendants was the appellee, AccEncyc US, a Chinese company that sold a handbag hanger hook (and a variety of other products) on Amazon of one of the four types alleged by Easlick to infringe upon her design patent. Appx546-552. *See also* Appx376-382, Appx474-75.

Easlick's initial filings were typical of those in a "Schedule A" case. Her Complaint alleged that she sold a particular handbag hook under the

trademarked brand name "TOTE HANGER,"[1] *see* Appx047-048, Appx058, Appx077, Appx079, that the named defendants were "actively participating in a conspiracy to distribute and sell Infringing Products," Appx049, that they had established various deceptive sales accounts for their products, Appx056, that they were using further fraudulent means to sell "confusingly similar imitations" of Easlick's hook, Appx056, that were "nearly identical" to her hooks, Appx061 (though also of lower price and lesser quality, Appx061), that they had engaged in a variety of deceptive practices to construct deceptive and anonymous websites design to evade attempts to enforce intellectual property rights, Appx063, and that Easlick was therefore entitled to *ex parte*, emergency relief delisting the defendants' products on third-party sales platforms and freezing their financial accounts. Appx068-070.

In her day-one filings, Easlick specifically moved the district court for the issuance of a TRO and an order to show cause why a preliminary injunction should not also issue in the same document. Here motion for a TRO and request for a preliminary injunction were supported by the

---

[1] Easlick made no claim of trademark infringement against AccEncyc or any other defendant in the case.

same allegations and declarations. *See* Appx654-655 (docket entries 4, 5-11, 13, 15, 18).

Other than the screenshots of AccEncyc's Amazon listing, Easlick's Complaint and moving papers were devoid of any particular allegation or evidence that AccEncyc did anything other than list a particular handbag hanger hook for sale on Amazon. In particular, Easlick made no specific allegations (and doubtless did not even know anything about), the volume of hooks sold by AccEncyc, the amount of proceeds or profits from any such sales, the quantum of funds in its Amazon account, or the extent to which those funds were the result of sales of the hooks at issue or other products.

Notwithstanding the thin basis of Easlick's allegations against AccEncyc (and every other individual defendant), and unfortunately as is common in a "Schedule A" case, the Court promptly (on the same day) issued a TRO that required Amazon to remove AccEncyc's listing for its hook and freeze all funds in its financial account. Appx553-569.

The November 20, 2023, TRO authorized service on the defendants via email, set a preliminary injunction hearing for December 4, 2023, and set deadlines for oppositions to the motion for preliminary injunction of

6

November 27, 2023, and December 1, 2023, for replies. Appx563. Easlick moved to extend these deadlines, Appx656, and on November 29, 2023, the district rescheduled the preliminary injunction hearing for December 19, 2023, with opposition papers due December 11, 2023, and replies due December 15, 2023. Appx656. Emails serving AccEncyc and the other defendants were sent on November 30, 2023. Appx656.

Easlick filed a new motion for a preliminary injunction the day before the scheduled hearing, on December 18, 2023. Appx658. AccEncyc filed its opposition to Easlick's motion on the same day, Appx658, asking the Court to accept it notwithstanding the prior deadline of December 11, 2023, and incorporating by reference an opposition filed on behalf of several other defendants on December 11, 2023. Appx657. Easlick filed no reply to AccEncyc's opposition prior to the preliminary injunction hearing, and made no complaint concerning the timeliness of AccEncyc's opposition at the hearing. *See* Appx570-602; *see also* Appx572. Indeed, at the hearing on its motion for a preliminary injunction, Easlick was given the opportunity, but declined, to submit any additional evidence in support of its motion; her counsel expressly chose to stand on the papers previously filed with the district court prior to the filing of AccEncyc's

opposition. Appx572 ("We're going to rely upon what was submitted with our papers.")[2]

The district court denied Easlick's motion as to AccEncyc (the other defendants that appeared having settled with Easlick) on January 26, 2024, Appx020, issuing a 19-page decision explaining its ruling. Appx001-018,

On February 13, 2024, Easlick filed a motion for reconsideration of the district court's January 26, 2024, order. Appx663. Despite not having claimed at the hearing that it had any more evidence to submit, Easlick argued it has not had time to respond to AccEncyc's arguments and, in particular, sought consideration of a new affidavit from Easlick herself

---

[2] Much of the argument at the preliminary injunction hearing concerned the appropriateness of the asset restraint imposed on AccEncyc and the other defendants. Despite likely having received information from Amazon as to the sales at issue and the funds frozen, Easlick did not submit any information regarding or speak to these amounts, which was particularly concerning to AccEncyc, as its sales of the product at issue had amounted to approximately $500, yet the TRO was restraining over $40,000 in its Amazon account. *See* Appx595-99. None of that is at issue on appeal, because Easlick's motion was denied and the asset restraint imposed by the TRO eventually lifted, although not until after the Court ruled on the motion as to AccEncyc on January 26, 2024 – almost two months after the restraint was imposed. Appx001-19.

in support of her arguments regarding the similarity of the products at issue and her claim for irreparable harm. Appx623-641. Easlick also filed physical specimens of the different hooks at issue in the case with the district court. *See* Appx642. AccEncyc responded on February 28, 2024. Appx664. Easlick sought permission to reply, Appx664-665, which request AccEncyc opposed, Appx665, and the district court denied. Appx665.

Among the grounds on which AccEncyc opposed Easlick's motion for reconsideration were that AccEncyc was no longer selling the hooks at issue, so there was no longer even any issue with respect to irreparable harm, and that the only practical effect of a preliminary injunction would be to (improperly) re-restrain AccEncyc's funds, which obviously were not derived from any allegedly infringing sales, as its hooks had been delisted for some time. Appx664.

On April 17, 2024, the district court denied Easlick's motion for reconsideration. Appx034. *See also* Appx022-033. In its ruling, the district court: (1) rejected Easlick's argument that it had failed to properly apply the "ordinary observer" test by focusing too much on particular differences between the Easlick design and the AccEncyc hook,

Appx028-031; (2) rejected Easlick's argument it had improperly failed to consider prior art, though also explaining how consideration of the prior art would not have changed the result, Appx031-032; and (3) declined to review Easlick's allegedly "new" evidence, finding nothing to indicate why this information could not have been submitted when Easlick filed her complaint and voluminous motion papers and asked for them to be considered and ruled upon immediately, and declining to supplement or seek additional time to supplement them at the preliminary injunction hearing. Appx026-028.

Easlick appealed the district court's decisions on February 26, 2024, Appx643, and May 14, 2024, Appx646. AccEncyc answered Easlick's Complaint on March 5, 2024. Appx664. Easlick has taken no further steps in the district court to prove its claim against AccEncyc. All other defendants have either settled with Easlick or have had default judgments entered against them.

## SUMMARY OF THE ARGUMENT

I.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING EASLICK'S MOTION FOR A PRELIMINARY INJUNCTION ON THE BASIS THAT ACCENCY'S DESIGN WAS NOT SUBSTANTIALLY THE SAME AS THAT DISCLOSED IN EASLICK'S PATENT.

The district court properly construed the claims of Easlick's patent to consider the ornamental aspects thereof entitled to protection against infringement, appropriately found that AccEnecyc had not established that the design of the hooks sold by AccEncyc was substantially the same under the standards set forth in *Egyptian Goddess* and its progeny, and rightly rejected Easlick's invitation to improperly use prior art to expand the scope of protection afforded by her design patent.

II.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING EASLICK'S MOTION FOR A PRELIMINARY INJUNCTION ON THE BASIS THAT SHE FAILED TO ESTABLISH THAT SHE WOULD SUFFER IRREPARABLE HARM ABSENT THE ISSUANCE OF AN INJUNCTION.

The district court also properly concluded that Easlick had not made the required showing that she would suffer irreparable harm in the absence of an injunction. Both in her initial filings and her later after-the-fact submissions, Easlick provided nothing more than conclusory assertions of harm that lacked any evidentiary support indicated she

11

would suffer (or did suffer since her motion was denied) actual irreparable harm if AccEncyc was not enjoined from selling its hooks (which it was no longer doing anyway), or re-freezing its (unrelated) funds at Amazon.

## ARGUMENT

## I.    STANDARD OF REVIEW

To secure a preliminary injunction against AccEncyc, Easlick was required to show: (1) she was likely to succeed on the merits of her claim that AccEncyc's hooks infringed on her design patent; (2) she was likely to suffer irreparable harm absent the injunction; (3) the balance of equities tipped in her favor; and (4) that an injunction was in the public interest." *ABC Corporation 1 v. Partnerships and Unincorporated Associations Identified on Schedule "A"*, 52 F.4th 934, 941 (Fed. Cir. 2022).

In order to establish a likelihood of success on her infringement claim, Easlick was required to demonstrate that "an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design." *Id.* (quoting *Crocs, Inc. v. International Trade Commission*, 598 F.3d 1294, 1303 (Fed. Cir. 2010), and citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008)).

Easlick was required to do more than raise the possibility of success at trial. She was required to show she would likely prove infringement.

13

To the extent a defendants, such as AccEncyc, "raise[d] a substantial question concerning … infringement … the preliminary injunction should not [have] issue[d]." *ABC Corporation 1*, 52 F.4th at 942 (reversing grant of a preliminary injunction in a "Schedule A" design patent case).

In order to establish a likelihood that she would suffer irreparable harm absent an injunction, Easlick was required to establish "a likelihood of substantial and immediate irreparable injury." *Apple Inc. v. Samsung Electronics Co.*, 695 F.3d 1370, 137 (Fed. Cir. 2012). She was required to come forward with something more than "conclusory statements," "theoretical arguments," or a mere showing there was the potential for lost sales or market share. *Apple Inc. v. Samsung Electronics Co.*, 678 F.3d 1314, 1324-25 (Fed. Cir. 2012).

The district court concluded that Easlick failed both to establish a likelihood of success on the merits of her infringement claim and to establish that she would suffer irreparable harm absent the issuance of an injunction against AccEncyc.

This Court reviews the denial of a motion for a preliminary injunction under the law of the regional circuit. *Natera, Inc. v.*

*NeoGenomics Laboratories, Inc.*, 106 F.4th 1369, 1374 (Fed. Cir. 2024). In the Third Circuit, "the scope of appellate review of a trial court's [preliminary injunction] ruling is narrow. Unless the trial court abused its discretion, or committed an error in applying the law, [the court of appeals] must take the judgment of the trial court as presumptively correct." *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3rd. Cir. 1982).

In a patent case, this Court gives "dominant effect" to its own precedent "insofar as it reflects considerations specific to patent issues," *Natera*, 106 F.4th at 1375, but will reverse a district court's decision to deny a motion for a preliminary injunction "only upon a showing that the court abused its discretion." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1375 (Fed. Cir. 2009). "Abuse of discretion is a deferential standard of review that requires a showing that 'the court made a clear error of judgment in weighing relevant factors or exercised its discretion based upon an error of law or clearly erroneous factual findings.'" *Id.* (quoting *Genetech, Inc. v. Novo Norodisk, A/S*, 108 F.3d 1361, 1364 (Fed. Cir. 1997)).

## II. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING EASLICK'S MOTION FOR A PRELIMINARY INJUNCTION.

Easlick has not shown, and cannot show, that the district court abused its discretion in denying her request for the extraordinary relief of a preliminary injunction based on her failure to meet her burden on her infringement claim or on her failure to establish she would suffer irreparable harm, let alone both. *See Winter v National Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right."). *See also Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3rd Cir. 2004) ("Preliminary injunctive relief is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'") (quoting *American Telephone & Telegraph Co. v. Winback & Conserve Program*, 42 F.3d 1421, 1427 (3rd Cir. 1994)).

### A. The District Court Did Not Abuse Its Discretion in Concluding that Easlick Failed to Demonstrate a Likelihood of Success on the Merits of Her Claim that AccEncyc's Product Infringed Her Design Patent.

Easlick admits that the district Court "articulated the correct legal standard" for evaluating her infringement claim. Appellants' Br. at 9. Indeed, the District Court's explanations of the law with respect to claim

construction, Appx006-008, and infringement, Appx010-012, cannot be faulted.

### 1. Construction of the Claims

The proper analysis starts with a construction of the claims of the design patent, which are limited to what is shown in application drawings. *See* Appx035-043 (Patent No. US D695,526 S). "Design patents have almost no scope. The claim at bar, as in all design cases, is limited to what is shown in the application drawings." *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988). The protection afforded by a design patent is further limited to "the ornamental design of the article." *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010). *See Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995) (requiring a determination of "the nonfunctional aspects of an ornamental design" before comparing the two design).

Easlick argues that the "overall" features of her design "are the two large hooks oriented at 90 degrees from each other." Appellants' Br. at 19. This overstates the scope of the ornamental design protected by her design patent. As the district court correctly noted, several features of Easlick's design are functional, not ornamental; namely, the use of two

17

attached hooks, and the vertical configuration thereof, both of which are obviously dictated by the function of providing a hook to hang from a rod for hanging handbags. Appx008-010. The district court also concluded that the 90-degree orientation of the two hooks was ornamental, Appx010, but, again, this actually overstated the proper scope of Easlick's design patent.

To determine a feature of a design is functional or ornamental, courts consider such factors as whether the function could be performed by other designs, whether an alternative design would adversely affect the utility of the article, and whether the advertising for the product touts the feature as having a specific utility. *See Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452, 1456 (Fed. Cir. 1997).

As shown by the various illustrations of the product as marketed in use, Appx077, Appx079, Appx084, and consistent with common sense, an essential aspect of the utility and functionality of Easlick's design is that it allows allow the handbags hung from the bottom hook to sit as a 90-degree angle to the rod from which the top hook is hung. This is actually the primary motivation behind the design, as it allows for significant space savings that would not be possible if the hooks were not so offset,

18

which would cause the handbags to hit or overlap each other – or significantly limit the number of handbags that could be hung from a given length of rod.

Providing for the perpendicular storage of handbags or similar items is what the hook "does" – it is not simply as aspect of how it "looks" – and the 90-degree offset aspect of the design thus falls outside the protection of Easlick's design patent. *See* Appx593-94 (Accencyc arguing as much to the district court). Easlick cannot credibly assert that a hook that does not have the 90-degree offset would be an acceptable substitute differing only in its "ornamental" aspect from her patented design.

Easlick's aggressive interpretation of the scope of what she claims is an "ornamental feature" of her design patent essentially seeks the protection that would be afforded by a hypothetical utility patent for any two-part hook that employs a 90-offset. It is precisely because, however, that this is a useful aspect of her design that it is not protected by her design patent. "If the design is dictated by performance of the article, then it is judged to be functional and ineligible for design patent protection." *Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*, 501

19

F.3d 1314, 1319 (Fed. Cir. 2007), *abrogated on other grounds by Egyptian Goddess*, 543 F.3d 665.

###### 2.    Substantial Similarity

But even if one considers the protected aspects of the Easlick design to include the 90-degree offset as well as the admittedly ornamental features identified by the district court (the shape of the hooks, the flare at the tip of the top hook, and the sphere ends of each hooks), the district court nevertheless correctly analyzed whether AccEncyc's hook was "substantially similar," Appx012-016, and concluded that Easlick had failed to show its design was "substantially the same" as the design disclosed in Easlick's patent. Appx016. Easlick claims this was an abuse of the district court's discretion. It clearly was not.

Easlick's primary complaint is that the district court allegedly improperly focused on particular differences in the two designs and thus failed to consider the "overall" similarity. Appellants' Br. at 18-19. This argument mischaracterizes both what the district court did and the appropriateness of its analysis. The district court expressly found that, notwithstanding some general similarity of the designs, there were significant differences between the ornamental elements of Easlick's and

20

AccEncyc's designs that rendered the designs dissimilar as a whole. "When left to compare the remaining ornamental features of the two designs, as a whole, there is a substantial question of whether the claimed and accused designs are plainly dissimilar." Appx015.

Easlick offers no grounds on which to question the district court's word that it did, in fact, consider whether the designs were similar overall as opposed to conducting a piecemeal analysis. To the contrary, the district court's analysis was precisely that mandated by this Court, which allows for consideration of distinct differences, provided the inquiry does not become "untethered from application of the ordinary observer inquiry as to the overall design." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015) (affirming finding of plain similarity following side-by-side comparison of multiple features of the designs). *See id.* at 1336-37. There is no requirement that a district court limit its reasoning to making only a general pronouncement as to whether two designs differ. District courts should be encouraged, not discouraged, from providing insight into the basis for its overall impression, which, like that of any "ordinary observer" would necessarily be influenced and based upon particular differences between the designs

21

that must be explained in words, notwithstanding the cautionary principle that verbal descriptions can distort the analysis. *See Crocs*, 598 F.3d at 1303.

The difference between the two designs is apparent to an "ordinary observer," as can be seen be from the side-by-side comparison that was undertaken by the district court, as shown by the following images reproduced in the district court's decision, Appx013-014, shown with slightly better quality here:



FIG. 1





FIG. 2





FIG. 5





FIG. 4



Appx036-037; Appx0039-040; Appx548. These differences were similarly apparent from the evidence submitted to the district court in Easlick's motion papers:

| THE CLOSEST COMPARATIVE DESIGNS, THE DESIGN CLAIMED IN THE '526 PATENT, AND DEFENDANTS' INFRINGING PRODUCT TYPE 3 | | | | |
|---|---|---|---|---|
| | '924 Design | '446 Design | Patented Design | Infringing Product Type 3 |
| First Side | | | | |

24

| THE CLOSEST COMPARATIVE DESIGNS, THE DESIGN CLAIMED IN THE `526 PATENT, AND DEFENDANTS' INFRINGING PRODUCT TYPE 3 | | | | |
|---|---|---|---|---|
| | '924 Design | '446 Design | Patented Design | Infringing Design Type 3 |
| Front |  | |  |  |
| Back |  | |  |  |
| First Side |  |  |  |  |
| Second Side |  | |  |  |
| Top |  | |  |  |
| Bottom |  | |  |  |

Appx222; Appx475 (Easlick's expert's declaration).[3]

As noted by the district court, the two hooks have a fundamentally different shape as a result of the "corkscrew-like center" of the Tote Hanger on the one hand and the "laterally bent center" of Accencyc's hook. Appx015. They are further distinguished by the shape of the bottom, which is more open in Accencyc's product, and the use of flares verses spheres at the tips of the hooks. Appx015. Describing these distinguishing features in reaching the conclusion that there was a distinction in the "overall visual impression" given by the two designs was not error – it was a conscientious application of the mandated inquiry.

The district court's conclusion that these two designs at issue in this case are dissimilar for purposes of the "ordinary observer" test based on

---

[3] In her brief, Easlick includes two different doctored versions of the smaller of the foregoing charts. Appellants' Br. at 6, 22-23. While the replaced images (photos of the Easlick design) were included in the materials Easlick submitted to the district court, the actual comparisons submitted by Easlick's expert and to the district court were those shown here, not those shown in Easlick's brief. Tellingly, Easlick's complaint contained no comparison of her design with AccEncyc's, *see* Appx047, Appx087 (comparing only three of the four "types" of designs alleged to infringe the Easlick's patent).

the overall impression given by the designs and these identifiable differences is wholly consistent with this Court's precedents.

> Our rejection of the point of novelty test does not mean, of course, that the differences between the claimed design and prior art designs are irrelevant. To the contrary, examining the novel features of the claimed design can be an important component of the comparison of the claimed design with the accused design and the prior art. But the comparison of the designs, including the examination of any novel features, must be conducted as part of the ordinary observer test, not as part of a separate test focusing on particular points of novelty that are designated only in the course of litigation.

*Egyptian Goddess*, 543 F.3d at 678. *See also, e.g., ABC Corporation*, 52 F.4th 944-46 (noting several distinctions between the various accused products and the claimed design).

AccEncyc's design is plainly dissimilar to that claimed in the Easlick patent. Although an ordinary observer would perceive they have the same function, no ordinary observer would mistake one for the other. As the district court aptly noted – and unlike the cases where this Court has found designs to be substantially similar – one could mix samples of the two products randomly and have no trouble attributing them to the correct source. Appx015. Easlick offers no valid basis to disagree with or disturb this conclusion on appeal.

27

3.    Consideration of Prior Art

Easlick also argues that the district was required to consider prior art in its analysis and failed to do so. Appellants' Br. at 19-23. Easlick's argument misconstrues both whether and how prior art should be considered in the context of design patent infringement. Contrary to Easlick's argument, it is not always necessary to consider prior art. More fundamentally, however, no consideration of prior art could have helped Easlick by strengthening the protection afforded any novel elements of her design; it could only have lessened the protection afforded to elements of her design that had been previously disclosed.

First, the district court was not required to consider prior art. The "sole test," as stated in *Egyptian Goddess*, 543 F.3d at 678, is whether an "ordinary observer" would perceive the "two designs are substantially the same," thus leading him or her to purchase the infringing product "supposing it to be the other." *Gorham Manufacturing Co. v. White*, 81 U.S. 511, 528 (1871), *quoted in Egyptian Goddess*, 543 F.3d at 670.

As stated in *Egyptian Goddess*, and as found by the district court in this case: "In some instances, the claimed design and the accused design will be sufficiently distinct that it will be clear without more that

28

the patentee has not met its burden of proving the two designs would appear 'substantially the same' to the ordinary observer." *Egyptian Goddess*, 543 F.3d at 678. Where the designs as not "plainly dissimilar," however, determining whether an ordinary observer would nevertheless find them similar or dissimilar "will benefit from a comparison of the claimed and accused designs with the prior art." *Id. See also Ethicon*, 796 F.3d at 1337 ("[C]omparing the claimed and accused designs with the prior art is beneficial only when the claimed and accused designs are not plainly dissimilar."). But if the designs are "plainly dissimilar," that is the end of the matter. *Egyptian Goddess*, 543 F.3d at 678.

Second, no analysis of the prior art would have been any help to Easlick. The purpose and intent of this aspect of the *Egyptian Goddess* analysis is to avoid giving undue weight to any similarity arising from previously disclosed aspects of the design allegedly infringed. It is not intended to be used to emphasize the similarity of the claimed design's novel aspects. As this Court noted in *Egyptian Goddess*, the overruled "novelty test" had the flaw of unduly emphasizing the similarity between novel features of the claimed design and the accused design, *id.* at 677, which is just what Easlick invites the Court to do here, claiming that her

design and AccEncyc's design are similar because they share the novel 90-degree offset feature.

The prior art analysis can be used to narrow the protection that might otherwise be afforded to the claimed design if analyzed in a vacuum (or it might not inform the analysis much at all), but it cannot be used to render the claimed and accused designs more similar than they would appear without consideration of the prior art.

None of Easlick's authorities, or this Court's precedents, hold otherwise. In *Egyptian Goddess* itself, this Court held that the allegedly infringing design's difference from the patented design was made more plain by an examination of the prior art. *Id.* at 682-83. In *Crocs*, this Court again explained that the "ordinary observer" test was intended to prevent undue focus on the aspects of the claimed design that differ from the prior art, cautioning that these shared aspects should provide a basis for finding confusion and therefore infringement only when the ordinary observer considers such similarities in the context of the overall similarity in the claimed and accused designs. 598 F.3d at 1303.

*Revision Military, Inc. v. Balboa Manufacturing Co.*, 700 F.3d 524 (Fed. Cir. 2012), did not illustrate any particular consideration of the

relevant prior art. It only suggested that the lower court might wish to consider the prior art on remand given this Court's determination that the designs were substantially the same when viewed as a whole. *Id.* at 527. Finally, in *ABC Corporation*, this Court held that the plaintiff's expert and the district court improperly relied upon the fact that the distinctive hourglass shape shared between the claimed and accused products was disclosed in the prior art to argue and find similarity, when in truth the fact that this aspect of the design was disclosed in the prior art meant that it "could not be relied upon to establish substantial similarity" under the *Egyptian Goddess* "ordinary observer" test. 52 F.4th at 942-43.

No case holds, as Easlick urges the Court to hold now, that the fact that a feature of the claimed design does not appear in the prior art but in the claimed and accused design enhances the overall similarity between the claimed and accused designs. The proper significance of the prior art in this case is only that it does not counsel against a finding of substantial similarly, not that it renders the designs at issue more similar. Any such conclusion would in fact, roll back the law and reinstate

a form of the novelty test rejected by this Court's decision in *Egyptian Goddess*.

Commentators have recognized this understanding of the proper consideration of prior art under *Egyptian Goddess*. "Under *Egyptian Goddess*, the presumptive scope of a design patent can be further narrowed using the prior art. … This second step was intended to 'cabin unduly broad assertions of design patent scope by ensuring that a design that merely embodies or is substantially similar to prior art designs is not found to infringe.'" Burstein, INTELLIGENT DESIGN & EGYPTIAN GODDESS: A RESPONSE TO PROFESSORS BUCCAFUSCO, LEMLEY & MASUR, 68 Duke L. J. ONLINE 94, 102-03 (2019) (also noting this "seems to have the practical effect of preventing the monopolization of most, if not virtually all, design elements that could be considered 'functional' in the broad, trademark sense").

Unintended monopolization is exactly what Easlick urges here. A reversal of the district court's conclusion that the designs are substantially similar would effectively grant Easlick a monopoly on 90-degree offset handbag-hanger hooks. This would go far beyond the purpose and intent of her design patent, which protects her only from

someone making a hook that is confusingly similar to her own – which AccEncyc's are not. This is not hyperbole, it is in fact apparent from the broad array of dissimilar designs against which Easlick asserted her design patent in this case. *See* Appx221-22. AccEncyc submits that a fair reading of the record in this case demonstrates Easlick's objective was not to remove from the marketplace products that would be confused with hers, but to prohibit competition by anyone selling a 90-degree offset handbag hanger hook – in effect she is trying to enforce a utility patent that she does not have.

> B.    Easlick Failed to Demonstrate a Likelihood that She Would Suffer Irreparable Harm Absent an Injunction.

The district court also denied Easlick's motion for a preliminary injunction on the independent ground that Easlick had failed to establish that she would suffer irreparable harm absent the issuance of an injunction. Appx016-019. Easlick makes four arguments for reversal of this portion of the district court's decision. None has merit.

First, Easlick attempts to argue that the district court ignored, overlooked, or otherwise failed to consider the evidence she submitted. Appellants' Br. at 24-25. There is no basis for this contention. The district

court's decision cited Easlick's brief in support of her motion no less than seven times on this issue. Appx016-019 (citing ECF No. 6). That memorandum, of course, relied heavily on the declarations Easlick now argues the district court ignored. *See* Appx080-092 (Easlick Declaration), Appx093-208 (Ference Declaration). The district court concluded, however, that these declarations only provided argumentative speculation, not evidence, of irreparable harm. Appx017-019.

An examination of the declarations confirms that the district court's conclusion was correct. Easlick's affidavit asserted that defendants' products infringed her patent and that sales thereof had decreased her sales and the goodwill associated with her product. Appx0085-092. But she provided not one iota of information or data showing any decrease or other effect on her sales nor any basis for concluding any such effect was the result of any defendant's conduct. She cited not one instance of actual confusion in the marketplace. Nor did she explain how the defendants' products were substandard or how the availability of allegedly cheaper, yet lower-quality product on the market worked any injury on her.

The Ference affidavit did nothing more than cite publications discussing problems arising from the manufacture and sale of counterfeit

goods and assert, wholly without foundation, that because the defendants were Chinese-based sellers on Amazon, they were likely to evade the enforcement of any judgment Easlick might obtain against them unless their funds were frozen by the Court. Appx095-097. This assertion (made, word-for-word and accompanied by the the filing of the same voluminous exhibits, in almost every "Schedule A" case) is, at best, of only abstract interest. Easlick (like every other Schedule A plaintiff) makes no effort to link this economic policy discussion to any conduct by any specific defendant in the litigation, including, but not limited to, AccEncyc.

The sole connection alleged between AccEncyc and each other defendant in this case between their conduct and the issues discussed in the materials attached to the Ference affidavit is the fact that they are Chinese companies that sell products on Amazon. (And the sole basis for even that assertion is the company information listed on their product pages on Amazon. *See*, *e.g.*, Appx549.) If anything, the evidence submitted by Easlick – the Amazon product page for AccEncyc's hook – shows that AccEncyc has a robust Amazon store that sells a diverse array of products. *See* Appx550. This contradicts rather than supports the near-defamatory assertion that, if found to have infringed her patent,

AcccEncyc will shutter its presumably profitable Amazon store and drain its account rather than satisfy a judgment. There was no basis for making this accusation AccEncyc and there was certainly no evidence provided to support it – other than the xenophobic guilt-by association reasoning set forth in the Ference declaration.

No plaintiff ever has full assurance a defendant will be able to pay an eventual judgment, but this hypothetical fear is not a sufficient basis to restrain a defendant's financial accounts, especially without any showing that the assets being restrained are the result of improper conduct. *See, e.g., Roadget Business PTE, Ltd. v. The [Defendants] Identified on Schedule A*, 735 F.Supp.3d 981 (N.D. Ill. May 30, 2024).

Easlick's second argument is that the district court should not have faulted it for failing to establish irreparable harm since AccEncyc did not argue the point in opposition to Easlick's motion. Appellants' Br. at 25. Surely Easlick cannot be arguing that a district court errors in requiring a party to establish the necessary predicate for the equitable relief it seeks even if the motion is, in whole or in part, not disputed by another party. When asking a court to exercise its equitable power to issue an injunction, "the moving party must satisfy the court that relief is needed." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953).

Easlick's third argument is a variation of her second; namely, that having secured a TRO on the basis of its initial filings without dispute, the district court was somehow estopped from requiring more on consideration of her motion for a preliminary injunction. Appx026-026. This is a ridiculous argument, which ignores the differences between temporary *ex parte* relief and an injunction of indefinite duration, not least of which is the requirement that a court make specific findings in order to support the issuance or denial of the latter so that there can be meaningful review on appeal. *See Murata Machinery USA v. Daifuko Co., Ltd.*, 830 F.3d 1357, 1363-65 (Fed. Cir. 2016).

Fourth, Easlick argues that her evidence did establish that she would suffer irreparable harm absent an injunction. Appellants' Br. at 26-29. Easlick's brief, however, merely repeats the arguments the district court already correctly held were insufficient to meet her burden. Easlick asserts, for example, that AccEncyc's conduct resulted in "actual confusion" in the marketplace and "created a false association" between its products and her brand that "threaten to destroy [her] reputation" and "devalue" her brand. Appellants' Br. at 27-28. But still Easlick fails to provide any factual basis for these self-serving conclusions.

37

Easlick similarly reasserts that an injunction was necessary to guard against the risk that it would be unable to collect a judgment from AccEncyc because the company is based in China. Appellants' Br. at 28-29. There is no rule that Chinese defendants' assets are subject to restraint in circumstances where another defendants' assets would not be, much less when the actual evidence of record shows the defendant to have a robust financial account in the United States subject to the jurisdiction of the court.

Finally, Easlick's irreparable harm arguments altogether ignore the fact that her arguments to the district court in support of her motion were based on assertions of potential irreparable harm on the basis of an alleged widespread conspiracy by 67 competitors to improperly exploit her intellectual property. Easlick never argued that it would suffer irreparable harm from AccEncyc alone selling a few-hundred-dollars worth of non-identical handbook hanger hooks.

## CONCLUSION

AccEncync respectfully requests that the Court affirm the decisions of the district court denying Easlick's motion for a preliminary injunction.

Dated: January 30, 2025          Respectfully submitted,


/s/ Timothy A. Duffy/_____
Timothy A. Duffy
Law Office of Timothy A. Duffy, P.C.
725 W Orchard Cir
Lake Forest, IL 60045
847-530-4920
tduffy@tduffylaw.com

*Counsel for Appellee*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:**  24-1538, 1826

**Short Case Caption:**  Jacki Easlick, LLC v. CJ Emerald

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑  the filing has been prepared using a proportionally-spaced typeface and includes  6,311  words.

☐  the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐  the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 01/30/2025

Signature:  /s/ Timothy A. Duffy

Name:  Timothy A. Duffy

Save for Filing